**Mr. & Mrs. George E. CLUTE, et al.**

v.

**The DAVENPORT COMPANY, et al.**

**Civ. No. H–83–817 (MJB).**

United States District Court,
D. Connecticut.

Jan. 26, 1988.

William J. Kupinse, Jr., Goldstein & Peck, Bridgeport, Conn., Mark A. Harmon, Peter Sills, Gerald L. Sobol, Bondy & Schloss, New York City, for plaintiffs.

Charles Gersten, Eliot B. Gersten, Allan W. Koerner, Michael E. Grossman, Gersten & Gersten, Hartford, Conn., Howard Wood, III, Manchester, Conn., Michael C. Daly, William J. Tracy, Jr., Furey, Donovan & Heiman, Bristol, Conn., Elizabeth M. Cristofaro, Joseph F. Skelley, Jr., Carl F. Yeich, Hartford, Conn., Joel M. Grafstein, Lublin, Lublin, Wolfe, Kantor & Silver, East Hartford, Conn., Frederick Krug, Waterbury, Conn., Warren B. Silberkleit, White Plains, N.Y., Louis B. Blumenfeld, Cooney, Scully & Dowling, Hartford, Conn., Barbara J. Sheedy, New Haven, Conn., Charles T. Locke, Locke & Herbert, New York City, for defendants.

Nathan Weissberg, pro se.

Ralph Adorno, pro se.

## RULING ON MOTION TO COMPEL AND FOR DECLARATORY RULING

BLUMENFELD, Senior District Judge.

### I. *Introduction*

Defendant Robert W. Johnson has moved to compel a plaintiff in this action, Dr. Joyce P. Gryboski, to answer certain questions asked during her recent deposition, which her attorneys contend would require disclosure of information protected by the attorney-client privilege and the attorney work product doctrine. Mr. Johnson also requests a declaratory judgment that the same questions may be asked of the remaining plaintiffs scheduled to be deposed, without violating either the attorney-client privilege or the interests protected by the work product doctrine.[1]

### II. *Facts*

This discovery dispute arises in the context of a complex action alleging violation of both state and federal securities laws, RICO, and other statutory and common law, in the sale of limited partnership interests and management of the resulting partnerships. The case has been pending since 1983. In August of this year the court issued an interim ruling on the plaintiffs' motion for summary judgment, deferring consideration of that motion until after the parties had completed discovery, in order that the defendants could gather evidence to support a possible statute of limitations defense as to at least some of the violations charged. A schedule was established for completion of discovery and the defendants arranged to depose some 23 of the plaintiffs.

Dr. Gryboski was the first of the plaintiffs to be deposed. Questioning focused upon Dr. Gryboski's reasons for believing that representations made to her by defendant Robert Johnson concerning the nature and future operation of the limited partnerships were false. She testified to misgivings about the truthfulness of Johnson's statements regarding progress in the development and marketing of the Florida condominiums and foreign films in which she had invested. She identified as the primary reason for her misgivings the disallowance by the Internal Revenue Service of the tax benefits to which she had been led to believe she was entitled on the basis of her limited partnership interest. She explained that a meeting of limited partners had been called because of suspicions generated by the disallowance of tax benefits. A member of the law firm now representing the plaintiffs attended that meeting, and shortly thereafter the instant law

---

1. Mr. Johnson's motion is also supported by a memorandum of law submitted by counsel to The Davenport Company, another defendant in this action. In absence of evidence to the contrary the court assumes Mr. Johnson's motion speaks on behalf of all the defendants to this action.

suit was brought. Dr. Gryboski's lawyer advised her not to answer any further questions about the facts supporting her belief that defendant Johnson had misled her concerning the nature and operation of the partnerships, because she had already exhausted her personal knowledge on this subject, and any other reasons she had for believing she had been misled resulted exclusively from the investigations and conclusions of her lawyers. It is precisely this latter information that the defendants now request the court to compel Dr. Gryboski and the other plaintiffs to supply. The plaintiffs state, and the defendants do not deny, that the information sought here resulted solely from examination, by the plaintiffs' lawyers, of documents obtained from the defendants through discovery.

## III. *Discussion*

### A. *The Attorney–Client Privilege*

The first basis on which the plaintiff's counsel urge that the instant motion should be denied is the attorney-client privilege. Because communications between attorneys and their clients constitute the undisputed source of the answers that the defendants seek to compel the plaintiffs to provide, it is contended that the privilege protecting such communications is appropriately invoked here. The defendants counter that the protections attaching to such communications cannot shield the underlying facts from discovery.

■ Both contentions oversimplify the issue. The purpose of the privilege, most basically stated, is to shelter the confidences a client shares with his or her attorney when seeking legal advice, in the interest of protecting a relationship that is a mainstay of our system of justice. *See Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). With this purpose in mind, the defendants' assertion that the privilege does not protect the facts underlying communications be-

tween lawyer and client clearly sweeps far too broadly, insofar as it ignores the myriad of imaginable situations in which the essence of privileged communications is functionally unseverable from the facts communicated. By the same token the plaintiffs' argument seems similarly overbroad, in that it would appear to shield from discovery all matters that are the subject of legal advice, regardless of whether the disclosure of such matters would tend to reveal confidences imparted by the client to the attorney.

■ Although some courts have, in other contexts, seen fit to apply the attorney-client privilege as broadly as the plaintiffs request, *see e.g., In re LTV Securities Litigation*, 89 F.R.D. 595, 602–03 (N.D.Tex. 1981), such an application strikes the court as inappropriate in the instant case. The communications at issue here are not confidences entrusted to an attorney by a client, but rather the conclusions of an attorney that have been related to a client. While there are other compelling arguments for protecting this information from disclosure under certain circumstances, *see infra* at 315, the purposes underlying the attorney-client privilege do not provide a persuasive justification. *See SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 522 (D.Conn.1976) (Newman, J.) ("Unless the legal advice reveals what the client has said, no legitimate interest of the client is impaired by disclosing the advice."), *appeal dismissed*, 534 F.2d 1031 (2d Cir.1976).[2]

### B. *The Work Product Doctrine*

The fact that the information the defendants seek to compel is not privileged does not entirely dispose of the matter, because the plaintiffs also claim the protection of the attorney work product doctrine. Specifically they contend that Dr. Gryboski's refusal to answer the questions at issue

---

**2.** The court notes also that where the privilege is recognized to protect the conclusions of a lawyer as they are imparted to a client, a waiver of such protection is quite likely to occur, given the frequent occasion the lawyer will have to express his or her conclusions during the course of the proceeding. *See Gilhuly v. Johns–Man-*

*ville*, 100 F.R.D. 752 (D.Conn.1983); *see also In re Claus Von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987). It is unnecessary to reach a conclusion as to whether a waiver of the privilege may have already occurred in the instant case because the court has found the communications at issue not to be privileged.

here is justified because the responses she would give would reveal her attorneys' protected work product.

Although it also seeks protection of the relationship between attorney and client, the work product doctrine, expressed in its modern form in the seminal case of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), covers more than the confidences of clients communicating with their attorneys. *In re Sealed Case*, 676 F.2d 793, 808–09 (D.C.Cir.1982) (J. Skelly Wright, J.); *Gilhuly v. Johns–Manville Corp.*, 100 F.R.D. 752, 754 (D.Conn.1983). Indeed, the protections of the work product doctrine extend, at least potentially, to a whole complex of interests, ranging "from clients' interests in obtaining good legal advice ... to the interests of attorneys in their own intellectual product." *In re Sealed Case, supra*, at 809 n. 56 (citing *Hickman v. Taylor, supra*, 329 U.S. at 511, 67 S.Ct. at 393). At its heart the doctrine protects both attorney and client from opposing counsel's "indirect attempt[s] to ascertain the manner in which an adversary is preparing for trial." *Bercow v. Kidder, Peabody & Co.*, 39 F.R.D. 357, 358 (S.D.N.Y.1965).

The protections of the work product doctrine are not unqualified. Both tangible and intangible products of an attorney's labors in preparing a case may, under proper circumstances, be obtained through discovery by opposing counsel. *Hickman v. Taylor, supra*, 329 U.S. at 510–12, 67 S.Ct. at 393–94. What constitute proper circumstances depends largely on the nature of the work product that opposing counsel seeks to discover.

To the extent that work product contains relevant, nonprivileged facts, the *Hickman* doctrine merely shifts the standard

presumption in favor of discovery and requires the party seeking discovery to show "adequate reasons" why the work product should be subject to discovery.... [T]o the extent that work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification.

*In re Sealed Case, supra*, at 809–10 (citations omitted).

In arguing their motion to the court the defendants state, erroneously, that "the work product doctrine only applies to physical objects and documents such as lists in contrast to the attorney/client privilege which covers both written and verbal communications." Quite surprisingly they cite *Hickman v. Taylor, supra*, at 512–13, 67 S.Ct. at 394, to support this contention, apparently overlooking the fact that that case, on the very pages cited, applied the protections of the work product doctrine to the contents of oral interviews conducted with witnesses. *Id.* Both *Hickman v. Taylor* and subsequent cases make clear that the doctrine is not limited in its scope to discovery of documents and other tangible items, nor is it limited to particular methods of discovery. *See, e.g., Bercow v. Kidder, Peabody & Co., supra* (deponent protected from responding as to what preparation had been made for deposition).[3] "Subject matter that relates to the preparation, strategy, and appraisal of the strength and weaknesses of an action, or to the activities of the attorneys involved, rather than to the underlying evidence, is protected regardless of the discovery method employed." 4 J. Moore, J. Lucas & G. Grother, *Moore's Federal Practice* ¶ 26.64[1] (2d ed. 1987).[4]

---

**3.** It is conceivable that the defendants mistakenly believe the work product doctrine to be confined to the terms of Fed.R.Civ.P. 26(b)(3). *Hickman v. Taylor*, however, enunciated a much broader principle. *See* 4 J. Moore, J. Lucas & G. Grother, *Moore's Federal Practice* ¶ 26.64[1] (2d ed. 1987).

**4.** The defendants appear to contend that all they seek to compel is the naked facts supporting the plaintiffs' fraud claim. To bolster the conten-

tion that such facts fall outside the definition of work product they cite *Brown v. Hart, Schaffner & Marx*, 96 F.R.D. 64 (N.D.Ill.1982), a case in which the plaintiff's attorneys sought to bar *all* access to the facts they relied upon in pressing their client's claim, through invocation of the attorney-client privilege and the work product doctrine. There are, no doubt, numerous cases in which these protections are inappropriately invoked to frustrate legitimate discovery. *See*,

■ There can be no doubt that the information the defendants seek to compel here would provide the kind of indirect access to opposing counsel's trial preparation and strategy with which the work product doctrine is concerned. Of course the applicability of the doctrine, as has already been observed, does not alone establish the plaintiffs' right to shield from discovery the information sought. However, before deciding that the plaintiffs are required to disclose all their contentions of fact with respect to the defendants' alleged misconduct, inquiry must first be made as to whether, under the circumstances, a substantial need for that information exists. *Cf.* Fed.R.Civ.P. 26(b)(3). The defendants have suggested no need for this information whatsoever.[5] Moreover, it is difficult to imagine how they could possibly show a sufficient need to hear the plaintiffs recapitulate, one after another, the facts that their lawyers have told them are supportive of their claim. Here, after all, the facts at issue came originally from documents produced by the defendants themselves, rather than from sources within the plaintiffs' or some third party's control. *Cf. Hickman v. Taylor, supra,* at 513, 67 S.Ct. at 394. Accordingly the court must refuse the defendants their requested relief.

Motion denied.

SO ORDERED.

---

*e.g., Cornaglia v. Ricciardi,* 63 F.R.D. 416 (E.D. Pa.1974). The defendants have failed to demonstrate how such cases are applicable to the instant one, where plaintiffs' counsel appear to have been most cooperative in providing the defendants with the facts underlying their legal contentions. *See infra* at note 5.

**5.** Indeed the defendants as much as concede the plaintiffs' lawyers have already informed them of the facts relied upon in support of their clients' claim. Pointing to interrogatory responses provided by the plaintiffs' counsel and to papers supporting the plaintiffs' motion for summary judgment, the defendants go so far as to argue that the disclosures contained therein with regard to the factual bases of the plaintiff's fraud claim should constitute a waiver of any protection afforded under the work product doctrine. The court does not agree. While these facts undoubtedly have effect as admissions of a party opponent, they do not thereby

take on the added effect of a waiver as to *all* that the plaintiffs' counsel may have discussed with their clients regarding their fraud claim. Moreover, the court notes that the concept of waiver has been appropriately applied much more narrowly with respect to the work product doctrine than with respect to the attorney-client privilege. *See* 4 J. Moore, J. Lucas & G. Grother, *Moore's Federal Practice* ¶ 26.64[4] (2d ed. 1987). To the extent that waiver might arguably be said to have occurred in the instant case it would only be as to those facts actually disclosed in the interrogatory responses and summary judgment papers. To require the plaintiffs to reiterate these facts during their depositions would not only be ludicrous, it might very well provide grounds for the issuance of a protective order, insofar as the information thus sought would necessarily be "unreasonably cumulative or duplicative." Fed.R.Civ.P. 26(b)(1)(i).