GOULD, LARSON, BENNET, WELLS AND MCDONNELL, P.C., ET AL. *v.* JOSEPH A. PANICO ET AL.
(SC 17279)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued February 8—officially released April 12, 2005

*Ronald J. Piombino*, for the appellant (defendant Iris N. Panico).

*John S. Bennet*, for the appellees (plaintiffs).

*Opinion*

KATZ, J. The principal issue on appeal is whether, in the context of a will contest, the exception to the attorney-client privilege, as recognized by this court in *Doyle* v. *Reeves*, 112 Conn. 521, 152 A. 882 (1931), that communications between a decedent and the attorney who drafted the executed will may be disclosed, applies when the communications do not result in an executed will. Specifically, we consider whether, in a probate proceeding in the course of a dispute among heirs, an attorney may be compelled to disclose testamentary communications that have not culminated in an executed will. We conclude that the exception to the privilege does not apply when the communications do not culminate in the execution of a will.

The record discloses the following undisputed facts. In February, 1993, the decedent, Edward Panico, contacted the plaintiff law firm, Gould, Larson, Bennet, Wells and McDonnell, P.C. (law firm), concerning his will and estate plan. The law firm previously had provided occasional legal advice to the decedent. The February, 1993 consultations resulted in the execution of a will by the decedent. In October, 2002, the decedent, who then was suffering from a terminal illness, contacted the law firm regarding further will and estate consultations. On October 7, 2002, the plaintiff Helen B. Bennet, then an associate with the law firm, went to the decedent's home to provide consultation. They met privately, but no will ultimately was prepared or executed.

On October 22, 2002, the decedent executed a will drafted by Joseph A. Reda, a New York attorney who was not affiliated with the law firm. The decedent died on October 31, 2003, and a probate estate was opened in the Probate Court for the district of Westbrook. A dispute developed between the defendants, the decedent's heirs,[1] as between the 1993 will and the 2002 will. In the course of the probate proceedings, the law firm and Bennet[2] were subpoenaed to disclose the files concerning their consultations with the decedent and to have Bennet testify pertaining to her October, 2002 conversations with the decedent regarding the possible drafting of a will.[3] The plaintiffs filed a motion to quash the subpoenas and a motion for a protective order, asserting that, because the 2002 consultations never had resulted in the drafting of a will, the communications were protected by the attorney-client privilege.[4] The Probate Court determined that the communications at issue fell within a well recognized exception to the attorney-client privilege—that transactions between a decedent and his attorney leading up to the execution of a will are not privileged—and, therefore, the communications between the decedent and the plaintiffs were

[1] The decedent's heirs are Joseph A. Panico, Augustine T. Panico, Edward J. Panico, Cynthia C. Panico, Mary Panico, Iris N. Panico and Antoinette Panico. The plaintiffs named all of the decedent's heirs as defendants in their appeal to the Superior Court. It is unclear from the record whether all of the heirs actually participated in that proceeding. Iris N. Panico, however, is the only heir participating in this appeal. For clarity, we refer to all the decedent's heirs collectively as the defendants and Iris N. Panico by name.

[2] Hereinafter, references to the law firm and Bennet collectively are to the plaintiffs.

[3] Shortly after his meeting with Bennet, the decedent consulted Pat Labbadia III, another attorney. The defendants also subpoenaed Labbadia to testify regarding his discussions, which similarly did not result in the drafting or execution of a will. Labbadia is not a party to this appeal.

[4] It was the law firm's understanding that the proponents of the subpoena sought to question its members with respect to matters other than the will it had prepared and which the decedent had executed in 1993.

not protected. Accordingly, the Probate Court denied the motions and, pursuant to General Statutes § 45a-186, the plaintiffs appealed from that decision to the Superior Court.

The plaintiffs thereafter filed a motion for summary judgment, claiming that the attorney-client privilege prohibits both Bennet's testimony and the law firm's disclosure of documents concerning any consultation with the decedent that did not result in the preparation of an executed will. The defendants opposed the motion on the ground that, when there is an action between the devisees under the decedent's will and others who claim under it, the attorney-client privilege will not prevent the attorney with whom the decedent spoke from giving testimony, especially if the need for disclosure outweighs the potential chilling effect on such communication. According to the defendants, the close proximity in time between the decedent's consultation with the plaintiffs and his execution of a will two weeks thereafter constituted a compelling reason to be informed of the nature of the discussions in order to determine whether there existed undue influence over the decedent when he executed his last will.

The trial court determined that "the exception to the attorney-client privilege in will contests is limited to communications between the decedent and the attorney who actually drafted the instruments that were ultimately executed by the decedent." On the basis of the uncontested fact that, following Bennet's conversations with the decedent in 2002,[5] the plaintiffs did not draft a will that ultimately was executed by the decedent, the trial court rendered summary judgment in the plaintiffs' favor, concluding that the motion for a

---

[5] It is undisputed that the conversations between Bennet and the decedent constituted confidential communications within the meaning of the attorney-client relationship.

protective order and the motion to quash the subpoenas should be granted. Iris N. Panico, one of the decedent's heirs; see footnote 1 of this opinion; appealed from the judgment of the trial court sustaining the plaintiffs' appeal.[6]

Panico makes the same argument that the defendants asserted at the trial court, claiming essentially that, in a will contest, the attorney-client privilege should not extend to protect a decedent's communications with his attorney even when those communications do not result in the preparation and execution of a will. Put another way, Panico contends that the exception to the privilege recognized by this court in *Doyle* v. *Reeves*, supra, 112 Conn. 521, that in a will contest, the communications between the decedent and the attorney who actually drafted the executed will may be disclosed, applies even when the communications have not resulted in an executed will. The plaintiffs respond by asking this court to determine whether they must testify or produce any documentation regarding the attorney-client communications the defendants seek with respect to the consultations with the decedent that did not result in an executed will. We determine, consistent with the trial court, that, when the communications between a decedent and his attorney do not result in an executed will, the communications do not fall within the exception to the attorney-client privilege and thus are confidential.

To evaluate the parties' claims, we begin with the appropriate standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judg-

---

[6] Panico appealed from the judgment of the trial court to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

ment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46]." (Citations omitted; internal quotation marks omitted.) *Will* v. *St. Vincent's Medical Center*, 252 Conn. 363, 368, 746 A.2d 753 (2000).

In the present case, the procedural history is undisputed, and the case distills to an issue under our common-law authority of how to determine the scope of the attorney-client privilege. "The basic principles of the attorney-client privilege are undisputed. Communications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice. *Doyle* v. *Reeves*, [supra, 112 Conn. 523]; [C.] Tait & [J.] LaPlante, Handbook of Connecticut Evidence (1976) § 12.5." (Internal quotation marks omitted.) *State* v. *Gordon*, 197 Conn. 413, 423, 504 A.2d 1020 (1985); see also *State* v. *Duntz*, 223 Conn. 207, 241, 613 A.2d 224 (1992); *State* v. *Burak*, 201 Conn. 517, 526, 518 A.2d 639 (1986). "Connecticut has a long-standing, strong public policy of protecting attorney-client communications. See, e.g., *Doyle* v. *Reeves*, [supra, 523] (quoting common-law rule embodied in 5 J. Wigmore, Evidence [2d Ed. 1923] § 2292). This privilege was designed, in large part, to encourage full disclosure by a client to his or her attorney so as to facilitate effective

legal representation." *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 48, 730 A.2d 51 (1999); accord Rules of Professional Conduct 1.6, commentary (stating that confidentiality is fundamental principle that encourages client to communicate fully and frankly). Rule 1.6 (a) of the Rules of Professional Conduct effectuates that goal by providing in relevant part that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation . . . ." The attorney-client privilege seeks to protect "a relationship that is a mainstay of our system of justice." *Clute* v. *Davenport Co.*, 118 F.R.D. 312, 314 (D. Conn. 1988). Indeed, this court has stated: "It is obvious that professional assistance would be of little or no avail to the client, unless his legal adviser were put in possession of all the facts relating to the subject matter of inquiry or litigation, which, in the indulgence of the fullest confidence, the client could communicate. And it is equally obvious that there would be an end to all confidence between the client and attorney, if the latter was at liberty or compellable to disclose the facts of which he had thus obtained possession; and hence it has become a settled rule of evidence, that the confidential attorney, solicitor or counselor can never be called as a witness to disclose papers committed or communications made to him in that capacity, unless the client himself consents to such disclosure." *Goddard* v. *Gardner*, 28 Conn. 172, 175 (1859).

Therefore, instructions given by a client to an attorney in relation to a will about to be drafted by the attorney are privileged. *Doyle* v. *Reeves*, supra, 112 Conn. 523. The importance of a testator's ability to discuss his testamentary intentions candidly and the concomitant professional advice needed from an attorney in regard to drafting the will to effectuate those intentions is paramount. In that regard, this court has stated that "[w]e see no legitimate material distinction

between such oral communications as passed between the decedent and [the attorney] and the written draft of a will . . . . If the attorney could not testify as to any information or expressions of intent or purpose proceeding to him from the decedent, or any advice given by him in the premises, it would seem to follow that he would likewise be incapacitated from testifying to the direct results thereof. *Collins* v. *Collins*, 110 Ohio St. 105, 143 N.E. 561, 38 A.L.R. 230, 242 [1924]. The contents of the draft of the will . . . are of necessity the result of information given and desires expressed by the client and advice afforded and professional skill exercised by the attorney, and so, in another form, were communications between client and counsel. *Butler* v. *Fayerweather*, [91 F. 458 (2d Cir. 1899)]; *In re Eno*, 196 [App. Div.] 131, 187 N.Y.S. 756, 763, 764 [1921]." *Doyle* v. *Reeves*, supra, 524–25.

Accordingly, an attorney is not permitted, and cannot be compelled, to testify as to communications made to him in his professional capacity by his client, unless there comes into play some recognized exception or limitation justifying admission of the communications at issue. In the context of will contests, this court recognized one such exception in *Doyle*, wherein the court held that, "[u]nless otherwise provided by statute, communications, by a client to the attorney *who drafted his will, in respect to that document and transactions between them leading up to its execution* are not privileged, after the client's death, in a suit between devisees under the will and heirs at law, or other parties who all claim under him. The principal reason is that the general rule is designed for the protection of the client, and it is deemed not for the interest of the testator, in a controversy between the parties all of whom claim under him, to have those declarations and transactions excluded which promote a proper fulfillment of his will." (Emphasis added.) Id., 525; see also *Middletown*

*Trust Co.* v. *Crowell*, 89 Conn. 290, 292, 93 A. 785 (1915) (rejecting invocation of privilege in will contest as between heirs regarding communications surrounding execution of will on ground that it would frustrate will's purpose and protection of client and client's estate).

In a will contest, wherein lack of capacity or undue influence has been raised, the court must determine whether the document presented as the last will and testament of such a deceased person is really such. In that instance, it reasonably cannot be contended that the testator had any interest in or desire to conceal his real intentions in such a matter when those intentions are called into question after his death. Clearly, the decedent knew when he had the will prepared that it would have to be made public and established as his will in court before it could become effective. Accordingly, if the will does not reflect the decedent's actual intention, but rather that of another who induced him by undue influence to make the will, it cannot be said that the decedent would want such a will established as his own. If the law protected the communications, it would foster that which it abhors, namely, deceit and fraud.

Therefore, courts have recognized that an attorney who prepared a will can be required to disclose all that he knows concerning the testator's state of mind. "The attorney may know by whom and to what extent the testator was influenced. Again, he may know that the testator was not influenced at all, and may further know the very reasons that controlled him in doing what he did in making the will. In the first instance, should the person causing the will to be made be protected by the privilege? And in the latter case, should the one who claims undue influence be permitted to invoke it and thus make certain circumstances to which he points and which may be easily explained to stand as the real truth? . . . The rule, we think, is well stated in the [annotation to a Utah Supreme Court opinion, *In re*

*Young's Estate*] 17 L.R.A. (N.S.) 108, in which it is said: 'It may be laid down as a general rule of law, gathered from all the authorities, that, unless provided otherwise by statute, communications by a client to the attorney who drafted his will, in respect to that document, and all transactions occurring between them leading up to its execution, are not, after the client's death, within the protection of the rule as to privileged communications, in a suit between the testator's devisees and heirs at law, or other parties who all claim under him.' *Russell v. Jackson*, [9 Hare 387, 391–92, 68 Eng. Rep. 558 (1851)]; *In re* [*Young's Estate*, 33 Utah 382, 388, 94 P. 731 (1908)]; *Glover v. Patten*, [165 U.S. 394, 395–406, 17 S. Ct. 411, 41 L. Ed. 760 (1897)]; *Kern v. Kern*, 154 Ind. 29, [33, 55 N.E. 1004 (1900)]; *Scott v. Harris*, 113 Ill. 447 [455, (1885)]; *O'Brien v. Spalding*, 102 Ga. 490, [492, 31 S.E. 100 (1897)]; *In re Loree Estate*, 158 Mich. 372, [377, 122 N.W. 623 (1909)]; 2 Wharton on Evidence, 591; *Blackburn v. Crawford*, [70 U.S. (3 Wall.) 175, 195, 18 L. Ed. 186 (1866)]." *Benzinger v. Hemler*, 134 Md. 581, 586, 107 A. 355 (1919). This rule is well settled law in many jurisdictions. See, e.g., *Estate of Dominici*, 151 Cal. 181, 188–90, 90 P. 488 (1907); *Olsson v. Pierson*, 237 Iowa 1342, 1352–53, 25 N.W.2d 357 (1946); *Warner v. Kerr*, 216 Mich. 139, 145, 184 N.W. 425 (1921); *Boyd v. Kilmer*, 285 Pa. 533, 539, 132 A. 709 (1926); *Maxwell v. Harper*, 51 Wash. 351, 357, 98 P. 756 (1909); *Estate of Smith*, 263 Wis. 441, 444, 57 N.W.2d 727 (1953); see also 98 C.J.S. 281, Witnesses § 326 (2002);[7] 81 Am Jur. 2d, Witnesses § 374 (2004); 2 A.L.R.2d §§ 13, 14 (1948); annot., 64 A.L.R. 185 (1930).

In *Doyle v. Reeves*, supra, 112 Conn. 527, the court concluded, however, that, when the communications

[7] It is stated in 98 C.J.S., supra, that "an exception to the application of the attorney-client privilege on behalf of a deceased client exists when the dispute is between various parties claiming 'through' or 'under' the client, as opposed to a dispute between the deceased client's estate and a 'stranger.' "

do *not* result in an executed will, "[t]he conditions underlying and essential to these relaxations of the general rule are not met. . . . We are not dealing with a completed and executed will but with a mere draft never executed by the decedent or even, so far as appears, read to and approved by him." Accordingly, the court concluded that, in that instance, both the consultations between the decedent and the attorney preliminary to the preparation of the new draft will and the instrument itself were within the protection of the privileged communication rule, when invoked on behalf of the decedent's executor and representative.

Panico asks this court to reject a strict construction of *Doyle* and conclude instead that, although no executed will resulted from the communications at issue, the rationale behind the exception is applicable to the present case. Essentially, she contends that, in light of the "potential" of undue influence underlying the will contest at issue, the reason for the disclosure outweighs the potential chilling of what would otherwise have been privileged communications. Her request is not simply to expand the exception to the privilege, but, rather, to narrow the privilege, contrary to the weight of the existing body of case law. We decline her invitation.

The well recognized exception relating to communications with respect to executed wills extends as far as is consistent with the reason, purpose and appropriate operation of the rule of privileged communications. Knowing that communications will remain confidential even after death encourages the client to communicate fully and frankly with counsel. Many attorneys act as counselors on personal and family matters, where, in the course of obtaining the desired advice, confidences about family members or financial problems must be revealed in order to assure sound legal advice. Without assurance of the privilege's posthumous application, the client may very well not have made disclosures

to his attorney at all. Similarly, the exception to the privilege, like the privilege itself, is designed for the benefit of the decedent. When a decedent executes his will, he knows that it will be made public and established as his will in court before it can become effective. If the will does not reflect the testator's will, but rather that of another who induced him by undue influence to make it, we impute to the decedent an interest that he would not want such a will to be accepted as his own. If we were to protect his otherwise privileged communications under such circumstances, we would be helping to perpetuate the deceit and fraud, contrary to the decedent's interest. Therefore, we allow the attorney who prepared the executed will to disclose all that he knows concerning the testator's state of mind. When the communications do not, however, result in an executed will, the decedent does not assume the attorney's file, notes or memory will become part of any court proceedings and therefore we cannot assume that the decedent expected his communications to be made public. In short, in the absence of an executed will, we do not infer that the decedent intended to waive those communications to effectuate his intent. Therefore, the established exception, which is consistent with the purposes of the privilege, should not be construed or applied so as to defeat its purpose.

Given the privilege and the limited exception thereto, at the very least the burden should be on the party seeking disclosure to demonstrate that there is compelling reason to require a departure from *Doyle*. Panico's claim of need falls well short of that burden. She has not pointed us to, nor have we found, anything in the record suggesting that the privileged communications necessarily bear on the issue before the Probate Court, or if they are relevant to the issue, that she has inadequate means of proving undue influence in the absence

of such evidence.[8] Indeed, our recent case law clearly underscores that mere need and relevance are not a sufficient basis to waive the privilege. See *Hutchinson* v. *Family Farm Casualty Ins. Co.*, 273 Conn. 33, 43–44, 867 A.2d 1 (2005); *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, supra, 249 Conn. 56–57. Panico also has not pointed us to any case supporting the extension of the exception to the privilege, and our research reveals that the overwhelming majority of courts to consider the issue have not broadened the exception under such circumstances. For example, in *DeLoach* v. *Myers*, 215 Ga. 255, 261, 109 S.E.2d 777 (1959), the Georgia Supreme Court relied on our reasoning in *Doyle* to conclude that the trial court under review had "erred in allowing the decedent's attorney to testify as to confidential communications arising out of the preparation of an unexecuted will for her, in this action for specific performance of an alleged oral contract to make a will, brought against her administrator and adverse to the interests of her estate." The court also cited cases from other jurisdictions in accord with our conclusion in *Doyle*, in addition to the ones we previously have cited, in which the attorney's testimony was held inadmissible in like situations. See id., citing *Runnels* v. *Allen's Administrator*, 169 S.W.2d 73, 76 (Mo. App. 1943); *Lennox* v. *Anderson*, 140 Neb. 748, 1 N.W.2d 912, 915–16 (1942); *Anderson* v. *Searles*, 93 N.J.L. 227, 107 A. 429, 430 (1919); but see *Tanner* v. *Farmer*, 243 Ore. 431, 435, 414 P.2d 340 (1966) (overruling prior holding barring evidence of communications preceding execution of will).

---

[8] The defendants in the present case would be free to call Reda to testify regarding his communications with the decedent, as well as offer any evidence of the circumstances surrounding the execution of the 2002 will, clearly the most probative evidence of whether the decedent was unduly influenced at the time he executed the will. They also could introduce any nonprivileged evidence of events that preceded the will execution, including, but not limited to, testimony from the plaintiffs as to nonprivileged matters.

The United States Supreme Court approvingly has cited the reasoning adopted by this court in *Doyle* and our sister jurisdictions, noting that the "testamentary exception cases consistently presume the privilege survives [a testator's death].[9] . . . They view testamentary disclosure of communications as an exception to the privilege: [T]he general rule with respect to confidential communications . . . is that such communications are privileged during the testator's lifetime and, also, after the testator's death unless sought to be disclosed in litigation between the testator's heirs. . . . The rationale for such disclosure is that it furthers the client's intent. . . . Indeed, in *Glover* v. *Patten*, [supra, 165 U.S. 406–408], this Court, in recognizing the testamentary exception, expressly assumed that the privilege continues after the individual's death. The Court explained that testamentary disclosure was permissible because the privilege, which normally protects the client's interests, could be impliedly waived in order to fulfill the client's testamentary intent." (Citations omitted; internal quotation marks omitted.) *Swidler & Berlin* v. *United States*, 524 U.S. 399, 404–405, 118 S. Ct. 2081, 141 L. Ed. 2d 379 (1998).

In our view, the testator's intent is expressed, *if at all*, in the creation of an executed will. When no will results from the privileged communications, there is no basis upon which to imply a waiver of that privilege. Accordingly, the trial court properly sustained the plaintiffs' appeal from the Probate Court's decision denying their motions for a protective order and to quash the subpoenas.

---

[9] About one half of the states have codified the testamentary exception by providing that a personal representative of the deceased can waive the privilege when heirs or devisees claim through the deceased client, as opposed to parties claiming against the estate, for whom the privilege is not waived. See, e.g., Ala. R. Evid. 502 (d) (2) (1996); Ark. Code Ann. § 16-41-101, Rule 502 (Sup. 1997); Neb. Rev. Stat. § 27-503, Rule 503 (1995).

The judgment is affirmed.

In this opinion the other justices concurred.