# DOROTHY P. LAROCQUE *v.* THERESA P. O'CONNOR, EXECUTRIX (ESTATE OF DORIS E. PERCOSKI), ET AL.
## (AC 25246)

Lavery, C. J., and Schaller and Peters, Js.

Argued March 22—officially released July 12, 2005

*John A. Parks*, for the appellant (plaintiff).

*Deborah W. A. Eliason*, for the appellee (defendant).

*Opinion*

LAVERY, C. J. The plaintiff, Dorothy P. Larocque, appeals from the judgment of the trial court denying her appeal from a decree of the Probate Court admitting the will of Doris E. Percoski to probate. On appeal, the plaintiff claims that the trial court (1) made factual findings that were unsupported by the evidence, (2) improperly excluded evidence and (3) incorrectly concluded that the plaintiff had not proven her claim of undue influence. We affirm the judgment of the trial court.

This matter was first tried to the Probate Court, which approved and admitted the will in question to probate. The plaintiff, a daughter of the decedent who received a bequest of one dollar but was otherwise disinherited by the terms of the will, appealed to the Superior Court. The plaintiff claimed that the will was a product of undue influence. After a de novo trial, the court found the following facts. "[The decedent] was deeply troubled by a problem with title to real estate which was the subject of a lawsuit between [the plaintiff] and her siblings. . . . [The decedent] had conveyed, by warranty deed, certain property to [the plaintiff], mistakenly believing she had full title to the property, when, in fact, she had only a one-third interest, having taken

that interest when her husband died intestate. [The plaintiff] wanted the title problem cleared up and, in an effort to do so, [the defendant] Theresa P. O'Connor, another daughter, consulted with attorney John Adams, who advised that all the Percoski children convey their interests in any property either conveyed to them by [the decedent] or subject to statutory distribution as a result of their father's death intestate, back to [the decedent] and, in turn, get correcting deeds back from her. Because of distrust that she would get a deed back, [the plaintiff] would not execute a deed back to [the decedent].

"As a result of this unfortunate stalemate, [the decedent] was very upset with [the plaintiff] and was concerned that by conveying property [in which] she did not have clear title, she could be violating the law, and she felt she was being mistreated by [the plaintiff]. At [the decedent's] request . . . O'Connor made an appointment for [the decedent] with . . . Adams. . . . Adams spoke privately with [the decedent], although her daughter . . . O'Connor, drove her to his office. [The decedent] explained to . . . Adams why she wanted to omit [the plaintiff] from her will, and he thereafter drafted a will accordingly, which he sent to her. After approximately three months when continued efforts to resolve the title problem failed, [the decedent] made an appointment to execute the will . . . . Recognizing the possibility of a will contest . . . Adams took commendable steps to ensure, as much as possible, that [the decedent] had testamentary capacity."[1] (Citation omitted.) After remarking on testimony indicating that O'Connor did not unduly influence the decedent to change her will, the court found that the last will and testament of the decedent, dated March 26, 1988, was valid. The court therefore denied the plaintiff's appeal

[1] We detail Adams' steps in part III.

and remanded the matter to the Probate Court for further administration. This appeal followed.[2]

## I

The plaintiff first claims that the court made factual findings that were unsupported by the evidence. The plaintiff takes issue with the following three findings: (1) Adams spoke privately with the decedent; (2) after drafting the will, Adams sent it to the decedent; and (3) the decedent made an appointment to execute the will. We disagree with the plaintiff and conclude that the court's factual findings were not clearly erroneous.

Our standard of review of a challenge to a court's factual findings is well settled. "[W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Wheeler* v. *Foster*, 44 Conn. App. 331, 334, 689 A.2d 523 (1997).

## A

The plaintiff maintains that the court made an erroneous factual finding when it stated in its memorandum of decision that Adams spoke privately with the decedent regarding her will. We disagree.

The plaintiff's argument relies on statements by the court made during the trial. After Adams testified, the

---

[2] The plaintiff named O'Connor, who is the executrix of the decedent's estate, and the other beneficiaries under the will as defendants.

court stated that it was clear that Adams had discussed the will on the day of the signing with only the decedent in the room. The plaintiff advised the court that its recollection was contrary to the testimony as transcribed by the court monitor as well as the testimony of Adams. The court replied that "its . . . recollection of the testimony [is] going to be the determining factor here." The plaintiff argues that this statement, along with Adams' testimony, discredits the court's finding.

In its memorandum of decision, the court found that "Adams spoke privately with [the decedent], although her daughter . . . O'Connor, drove her to his office." The plaintiff asks us to conclude that this finding was clearly erroneous. We are not persuaded.

The court does not indicate what evidence it relied on to make its finding. Although the court may have made preliminary statements during the course of the trial, those statements do not constitute findings. The court has the opportunity to review all of the evidence produced at trial before issuing its memorandum of decision. Therefore, we must look to the record as a whole to determine whether the finding was supported by the evidence. We conclude that it was.

There is no question that Adams spoke extensively to the decedent regarding her will. The issue arises over whether O'Connor was also present during those meetings. Although Adams testified that O'Connor had been present at some of his meetings with the decedent, O'Connor denied that she was ever in the room when the will content was discussed. She testified that "Adams said this would be between him and my mother. This was . . . my mother's affair and . . . it wouldn't be a good idea even to be present." She further testified that she remained in the outer office when the will was executed. Sally Lloyd, a witness to the will, also testified

that Adams spoke privately with the decedent prior to the execution of the will.

"Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." (Citations omitted; internal quotation marks omitted.) *Steiger* v. *J. S. Builders, Inc.*, 39 Conn. App. 32, 34–35, 663 A.2d 432 (1995). The court was free to credit the testimony of O'Connor and Lloyd, and we will not disturb its finding that Adams spoke privately with the decedent.

## B

The plaintiff also contends that there was insufficient evidence to support the court's finding that after drafting the will, Adams sent it to the decedent. She argues that the evidence at trial showed that Adams might have sent the will to either O'Connor or to the decedent, but there was no definite evidence as to which person received the document. We disagree.

The court specifically found that "[the decedent] explained to . . . Adams why she wanted to omit [the plaintiff] from her will, and he thereafter drafted a will accordingly, which he sent to her." Adams testified: "[I] [p]repared the will, and then *I sent a copy of the will to [the decedent]*. Now, I'm not sure if I sent it to [O'Connor] or sent it directly to [the decedent]. I can't remember that." (Emphasis added.) In addition, O'Connor testified that she had never received a copy of the will. The court was free to determine that the will was sent to the decedent, given that evidence, and we will not disturb its finding.

## C

The plaintiff maintains that there was insufficient evidence for the court to find that the decedent made an appointment to execute the will. We disagree.

The court found that "[a]fter approximately three months, when continued efforts to resolve the title problem failed, [the decedent] made an appointment to execute the will . . . ." Adams testified that he received a telephone call informing him that the decedent wanted to make an appointment to sign the will and stated that he believed that O'Connor had made the telephone call.

If a child makes an appointment for her parent at the parent's request, it is still the parent's appointment. The court's finding on that issue is not inconsistent with the evidence, and we do not have an articulation explaining the finding in more depth. Even if the court should have found that O'Connor made an appointment for the decedent to execute the will, that mistake is harmless in light of the court's other findings regarding undue influence, which will be discussed in part III.

## II

The plaintiff next claims that the trial court improperly excluded evidence. That evidence consisted of an audiotape of the Probate Court hearing of this case and department of motor vehicles records of the decedent. We are not persuaded.

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . Our review of such rulings

is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Billie*, 250 Conn. 172, 180, 738 A.2d 586 (1999).

A

The plaintiff claims that the trial court improperly excluded an audiotape of the probate hearing both as a full exhibit and to refresh a witness' recollection. We conclude that the trial court did not abuse its discretion in declining to make the recording a full exhibit, but should have allowed the tape to be used to refresh the witness' recollection. We nonetheless determine that this impropriety was harmless.

The plaintiff attempted to introduce the tape recording into evidence as a full exhibit in an effort to impeach the testifying witness, O'Connor, with a prior inconsistent statement or a statement by a party opponent. Before an item of evidence may be admitted, there must be a preliminary showing of its genuineness, i.e., that the proffered item of evidence is what its proponent claims it to be. Conn. Code Evid. § 9-1 (a). The requirement of authentication applies to all types of evidence, including sound recordings. See, e.g., *State* v. *Lorain*, 141 Conn. 694, 700–701, 109 A.2d 504 (1954).

In this case, the tape recording was a private recording of the probate hearing made by the plaintiff's counsel. Pursuant to General Statutes § 51-72, a Probate Court may authorize a stenographer to record the proceedings if both parties agree in writing. If that occurs, the appeal to the trial court is based on the record before the Probate Court and is not a trial de novo. General Statutes § 45a-186 (a). There was no such agreement here. The Probate Court allowed the plaintiff to tape the proceeding only on counsel's assurance that the recording was to aid his note-taking and would not

be used for another purpose. As stated by the trial court, "I do not think that the tape recording has properly been authenticated, and I'm going to sustain the objection to its introduction. I think, in order to do this, the provision that you hire a recorder or a stenographer and have it recorded, properly authenticated, is the way to introduce these things. And I don't think you can take a private tape recorder in and expect it to be introduced into evidence. There are too many variables involved in that kind of proceeding. I'll sustain the objection." We share the court's reservations regarding the reliability of the exhibit and conclude that the tape recording was not admissible.

The plaintiff also sought to use the recording to refresh the witness' recollection. When questioned about her testimony at the probate hearing concerning her father's "ethic" regarding the sale of land to family members, O'Connor first stated that she did not make any statements on this topic, but then denied knowledge of her statements at the proceeding. "*Any object* or writing may be used by a witness to refresh the witness' memory while testifying. . . ." (Emphasis added.) Conn. Code Evid. § 6-9 (a). "The object or writing need not be admissible because the witness will testify from his . . . refreshed recollection, not from the object or writing that was used to refresh his . . . recollection." Id., § 6-9 (a) commentary. The court should have allowed the tape to be played to the witness in an attempt to refresh her recollection of her prior testimony. The plaintiff, however, has failed to show that this impropriety caused her substantial prejudice or to suffer an injustice. At trial, the plaintiff testified as to O'Connor's statements regarding her father's "ethic." Because evidence of the potential inconsistent statement was produced at trial and considered by the fact finder, the failure to allow the tape to be used in this way was harmless.

## B

The plaintiff also claims that the court improperly excluded department of motor vehicles records of the decedent. We disagree.

The plaintiff attempted to enter into evidence certified copies of the decedent's motor vehicle records as proof that she had a valid driver's license. She argues that these records were relevant to contradict testimony that O'Connor had driven the decedent to Adams' office to execute the will because the decedent was unable or unwilling to drive there. The court sustained an objection that the copies were inadmissible on relevance grounds. We agree.

There was testimony explaining that the decedent drove and the extent of her driving. Proving that she had a license would not have shown how often or how far she drove. Even if the certified copies had been admitted, they would not have allowed the inferences that the plaintiff asserts. Thus, the court did not abuse its discretion by excluding those records.

## III

The plaintiff maintains that the court incorrectly concluded that she did not prove her claim of undue influence. We disagree.

"In a will contest, wherein lack of capacity or undue influence has been raised, the court must determine whether the document presented as the last will and testament of such a deceased person is really such." *Gould, Larson, Bennet, Wells & McDonnell, P.C.* v. *Panico*, 273 Conn. 315, 324, 869 A.2d 653 (2005). Undue influence sufficient to invalidate a will is "[t]he degree of influence necessary to be exerted over the mind of the testator to render it improper, [and] must from some cause or by some means be such as to induce him to act contrary to his wishes, and to make a different will

and disposition of his estate from what he would have done if left entirely to his own discretion and judgment. That his free agency and independence must have been overcome, and that he must, by some dominion or control exercised over his mind, have been constrained to do what was against his will, and what he was unable to refuse and too weak to resist. But that moderate and reasonable solicitation, entreaty or persuasion, though yielded to, if done intelligently and from a conviction of duty, would not vitiate a will in other respects valid. . . . Subsequently [our Supreme Court] reiterated the above principle and amplified it as applied to a case where there was no direct evidence of undue influence, in these words: It is conceded that no direct evidence of undue influence was adduced, and none was necessary, provided the foundation was laid for a reasonable inference that the will was not such as the testator would have made, if left entirely to his own discretion, and that his free agency and independence had been overcome, so that he was constrained to do what he was unable to refuse and too weak to resist. . . . On the other hand, the rule which dispenses with the necessity of direct proof of undue influence, does not relieve the contestant from the burden of laying a safe foundation of material facts proven, and inferences which fairly and convincingly lead to that conclusion." (Citations omitted; internal quotation marks omitted.) *Lee* v. *Horrigan,* 140 Conn. 232, 237–38, 98 A.2d 909 (1953).

After reviewing the record, we agree with the court that the plaintiff did not sustain her burden of proving undue influence. The following findings, taken from the court's memorandum of decision, support that conclusion. The court found that Adams took commendable steps to ensure that the decedent had testamentary capacity. Those steps included: (1) using acquaintances of the decedent as witnesses instead of strangers; (2) obtaining a statement from a physician that the dece-

dent was lucid and understood instruction; (3) including the reasons for disinheriting the plaintiff in the will; (4) recording his conversations with the decedent and the witnesses; and (5) speaking to the plaintiff's attorney and detailing the decedent's upset over the land issue. The court stated that it "was also impressed with the testimony of [the defendant] Richard Percoski, [the decedent's] son, who, although he lived in New Hampshire, had frequent telephone conversations with his mother, who often expressed her disappointment over the way [the plaintiff] treated her. He also described his mother as a strong person who could not be told what to do."

The court concluded that it did not find that undue influence was exerted on the decedent. It also found that the decedent was not influenced easily. The following findings support that conclusion: (1) the decedent expressed that she was upset over the plaintiff's refusal to cooperate in the efforts to clear the title to the disputed property; (2) the decedent reluctantly disinherited the plaintiff only after taking steps to resolve the situation; and (3) there was evidence that the plaintiff's relationship with her family began to sour in 1984. Given those findings by the court, the court correctly concluded that the plaintiff did not prove her claim of undue influence.

The judgment is affirmed.

In this opinion the other judges concurred.