## PATRICK COX *v.* PATRICIA BURDICK
### (AC 26880)

Gruendel, Rogers and Peters, Js.

---

Argued April 24—officially released October 24, 2006

*Conrad Ost Seifert*, with whom was *Patricia Burdick*, pro se, for the appellant (defendant).

*Randall A. Ortega*, with whom was *Matthew G. Berger*, for the appellee (plaintiff).

GRUENDEL, J. This case arises from a stipulated judgment between the parties requiring the defendant, Patricia Burdick, to sell her house to the plaintiff, Patrick Cox. The defendant now appeals from the denial by the trial court of her motion to open the stipulated judgment. On appeal, the defendant claims that the court improperly (1) ordered her attorney, Theodore M. Ladwig, to divulge confidential information protected by the attorney-client privilege and (2) failed to find that she was under duress at the time the stipulated judgment was rendered. We affirm the judgment of the trial court.

On February 1, 2005, the parties entered into a stipulated judgment to resolve a lawsuit in which the plaintiff sued the defendant to obtain specific performance of the conveyance of real property in accordance with the terms of a contract.[1] Both parties were present in court and agreed to the stipulation, which was signed by the parties and their attorneys, including Ladwig. The stipulation required the defendant to sell the subject property to the plaintiff for $145,000 and specified the details for the transfer of the property.

On March 1, 2005, the defendant, without the assistance of Ladwig, filed a motion to open the judgment, claiming that "I was not in agreement my lawyer push

---

[1] On January 27, 2004, the plaintiff entered into a purchase and sale agreement with the defendant to convey the subject property at 90 Fairhaven Road in Niantic for a purchase price of $138,000. Subsequently, the defendant refused to convey the property to the plaintiff. The plaintiff, who alleged that he had complied with all conditions of the contract, then instituted an action seeking specific performance of the agreement.

me," and "I been diagnosed with post traumatic syndrome disorder." The following day, Ladwig filed a motion to withdraw as counsel because of an irreparable deterioration of the attorney-client relationship. The motion to withdraw was granted on April 12, 2005. On March 15, 2005, the plaintiff filed a motion to enforce the stipulated judgment, as well as an objection to the defendant's motion to open the judgment.

A hearing was scheduled for June 30, 2005, on the defendant's motion to open the judgment. At the hearing, the defendant offered her testimony, as well as that of her social worker, Sherilyn Cartagena. The plaintiff offered only the testimony of Ladwig. On August 8, 2005, the court denied the defendant's motion to open the judgment, finding that she "failed to prove her claims of duress or lack of mental capacity at the hearing." This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that at the hearing on the motion to open the stipulated judgment, the court improperly ordered Ladwig to divulge confidential information protected by the attorney-client privilege. We are not persuaded.

The following additional facts are relevant to the defendant's claim. At the June 30, 2005 hearing, the plaintiff called Ladwig as his sole witness. Early in the examination, during foundation questions not specifically related to this case, Ladwig invoked the attorney-client privilege. The court ordered him to answer. Later, when asked about his impressions of the defendant's mental condition, Ladwig again invoked the privilege, which the court also overruled. When asked whether he had changed his opinion as to the defendant's mental condition in light of her physician's opinions, Ladwig again invoked the privilege. This time, the court stated:

"[I]n this case, the privilege doesn't apply. This whole issue is your relationship with this witness." The court further informed Ladwig that it had made its ruling and that he could pursue it on appeal if he desired. Thereafter, Ladwig answered the remainder of the plaintiff's questions without further invoking of the privilege.

We begin by stating our standard of review. "Whether the trial court properly concluded that there is an exception to the attorney-client privilege . . . and, if so, whether it properly delineated the scope and contours of such an exception, are questions of law. See *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 168–69, 757 A.2d 14 (2000) (whether court should recognize civil fraud exception to attorney-client privilege and limitations on exception are questions of law). Accordingly, our review of these issues is plenary." *Hutchinson* v. *Farm Family Casualty Ins. Co.*, 273 Conn. 33, 38, 867 A.2d 1 (2005).

"In *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 52, 730 A.2d 51 (1999), [the Supreme Court] recognized that the attorney-client privilege was created to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and administration of justice. . . . Exceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications. It is obvious that professional assistance would be of little or no avail to the client, unless his legal adviser were put in possession of all the facts relating to the subject matter of inquiry or litigation, which, in the indulgence of the fullest confidence, the client could communicate. And it is equally obvious that there would be an end to all confidence between the client and [the] attorney, if the latter

was at liberty or compellable to disclose the facts of which he had thus obtained possession . . . .

"[The Supreme Court] also recognized in *Metropolitan Life Ins. Co.* that the attorney-client privilege implicitly is waived when the holder of the privilege has placed the privileged communications in issue. . . . [B]ecause of the important public policy considerations that necessitated the creation of the attorney-client privilege [however], the at issue, or implied waiver, exception is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action. . . . *Such is the case when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship.* In those instances the party has waived the right to confidentiality by placing the content of the attorney's advice directly at issue because the issue cannot be determined without an examination of that advice." (Citation omitted; emphasis added; internal quotation marks omitted.) *Hutchinson* v. *Farm Family Casualty Ins. Co.*, supra, 273 Conn. 38–39.

The defendant first argues that the court improperly determined that the attorney-client privilege was waived and ordered Ladwig to testify over his assertion of the privilege. Even if we assume arguendo that the substance of Ladwig's testimony was covered by the privilege,[2] we look to whether the defendant waived

---

[2] We note that not all of Ladwig's testimony was of the sort covered by the attorney-client privilege, if it had not been waived. "The basic principles of the attorney-client privilege are undisputed. *Communications* between client and attorney are privileged when *made in confidence* for the purpose of seeking legal advice." (Emphasis added; internal quotation marks omitted.) *Gould, Larson, Bennet, Wells & McDonnell, P.C.* v. *Panico*, 273 Conn. 315, 321, 869 A.2d 653 (2005). Much of Ladwig's testimony did not concern protected communications between himself and the defendant. Moreover, the defendant's expert witness, Herbert Nieburg, a licensed professional

the privilege. The very nature of the defendant's claim is that Ladwig behaved inappropriately and gave her bad advice with regard to the sale of her home. To that end, the defendant testified that Ladwig "manipulated me and conversed me and told me there was no other way." "If the information is actually required for a truthful resolution of the issue on which the party has raised . . . the party must either waive the attorney-client privilege as to that information or it should be prevented from using the privileged information to establish the elements of the case." (Internal quotation marks omitted.) *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, supra, 249 Conn. 53. The defendant attempts to substantiate her claim with testimony that Ladwig did something wrong, yet asserts the attorney-client privilege to deny the plaintiff the opportunity to ascertain the credibility of her account or to present contrary evidence. Because the defendant's claim cannot be resolved without examining her relationship with Ladwig, the court properly determined that the attorney-client privilege had been waived.[3]

In the alternative, the defendant argues that Ladwig's testimony is not integral to her claims on appeal,[4] and, consequently, even if she waived the privilege, the testimony should not have been permitted. In making this

counselor, was present in the conference room before the defendant signed the stipulated judgment, as well as in court at the time the judgment was rendered. These communications, therefore, were not made in confidence.

[3] Because we conclude that the court properly determined that the defendant had waived the attorney-client privilege, we need not reach the question of whether the defendant suffered any prejudice from the allegedly improper evidentiary ruling.

[4] The defendant also correctly notes that "mere need and relevance are not a sufficient basis to waive the privilege." *Gould, Larson, Bennet, Wells & McDonnell, P.C.* v. *Panico*, 273 Conn. 315, 328, 869 A.2d 653 (2005). To the extent that she uses this as a basis to argue that the court's ruling was improper, however, we are not persuaded. The waiver of the privilege is not grounded solely in need and relevance, but is also grounded in the defendant's actions that put the allegedly privileged communications between herself and Ladwig at issue.

argument, the defendant focuses solely on the claim that "her functioning capacity was seriously diminished" at the time she signed the stipulated judgment, and, thus, she did so under duress. The record, however, reveals that the defendant also claimed in her motion to open the judgment that Ladwig coerced her into signing the stipulated judgment.[5] Additionally, the defendant repeatedly testified at the June 30, 2005 hearing that she believed that Ladwig had "manipulated" her into signing the stipulated judgment. We conclude, therefore, that the defendant's coercion claim was alive at the time Ladwig testified and that the court properly allowed testimony relevant to it.[6]

Additionally, the defendant argues that even if she waived the attorney-client privilege, the scope of Ladwig's testimony exceeded that waiver. Specifically, she argues that the content of the advice that Ladwig gave to her as well as his impressions of her were not relevant to her coercion claim. "The [trial] court has broad discretion in determining the relevance of the evidence." *Sullivan* v. *Metro-North Commuter Railroad Co.*, 96 Conn. App. 741, 749, 901 A.2d 1258 (2006). The court acted within its discretion to determine that testimony on the content of the advice given to the defendant by Ladwig was necessary for the court to examine whether his conduct was coercive. Similarly, the court acted within its discretion to determine that Ladwig's understanding of the defendant's mental state was relevant to whether he used that knowledge to coerce her.

---

[5] The defendant repeated this claim in her "brief of argument" submitted to the court on May 26, 2005.

[6] In her reply brief, the defendant concedes that "[b]ecause [she] never stated on the record that she was completely dropping her allegation that her former attorney coerced her, perhaps this opened the door to permit the plaintiff to inquire of the defendant's attorney if the attorney in fact coerced his former client. In other words, perhaps to this limited extent, the exception to the privilege applied."

Accordingly, the scope of Ladwig's testimony did not exceed the waiver.[7]

## II

The defendant next claims that the court improperly found that she was not under duress[8] at the time the stipulated judgment was rendered and, therefore, denied her motion to open the judgment. We agree with the conclusion of the court.

The following additional facts are relevant to the defendant's claim. In November, 2004, Ladwig consulted with Herbert Nieburg, a licensed professional counselor. Nieburg met with the defendant several times and prepared a report on the defendant's mental condition. At his January 21, 2005 deposition, Nieburg described his findings on the defendant's mental condition. He also stated, however, that he was unable to form an opinion as to the defendant's psychiatric condition on January 27, 2004, when she signed the purchase and sale agreement. On February 1, 2005, Nieburg was present in the conference room before the defendant

---

[7] Moreover, we note that much of the testimony that the defendant claims exceeded the scope of the waiver is not protected by the attorney-client privilege. See footnote 2.

[8] The court also concluded that the defendant failed to prove her claim of lack of mental capacity. On appeal, the defendant frames her issue as follows: "Did the trial court err by failing to find [that] the defendant was under duress, which would have required the court to open the judgment?" In doing so, the defendant describes her mental condition but briefs only the law of duress without sufficient independent legal analysis related to lack of mental capacity. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." (Internal quotation marks omitted.) *Turner* v. *American Car Rental, Inc.*, 92 Conn. App. 123, 130, 884 A.2d 7 (2005). Accordingly, the defendant has waived any independent claim related to the court's finding on her failure to meet the burden of proving lack of mental capacity, and we focus solely on her claim of duress. We will, however, consider the arguments about the defendant's mental state insofar as they relate to her claim of duress.

signed the stipulated judgment, as well as in court at the time the judgment was rendered. Although Nieburg was not present on June 30, 2005, at the hearing on the motion to open, the plaintiff entered into evidence the transcript of Nieburg's deposition as an exhibit.

At the hearing on the motion to open the stipulated judgment, the defendant offered the testimony of Cartagena, a social worker who had been seeing her since November, 2004, at Integrated Behavioral Health.[9] Cartagena testified that given the defendant's stress level, "it certainly is difficult for her to have handled this whole matter." She further testified that the defendant suffered from post-traumatic stress disorder and had a history of anxiety and abuse.[10] From these observations, Cartagena opined that the defendant felt both pressured to sign and that she did not have another option at the time the stipulated judgment was rendered.

We begin by stating our standard of review for a challenge to the denial of a motion to open. "The principles that govern motions to open or set aside a civil judgment are well established. A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court

---

[9] In fact, Cartagena met with the defendant only once prior to the rendering of the stipulated judgment. She did not meet with her again until February 5, 2005. Between those meetings, however, the defendant saw a psychiatrist with the practice who prescribed medication to her to reduce her anxiety.

[10] Cartagena testified as to various notes in the defendant's medical history describing her stress and anxiety, and those aspects of the history that, Cartagena opined, contributed to the stress and anxiety.

could reasonably conclude as it did." (Internal quotation marks omitted.) *Reiner, Reiner & Bendett, P.C.* v. *Cadle Co.*, 278 Conn. 92, 107, 897 A.2d 58 (2006).

"A motion to open a stipulated judgment, when grounded on mistake or duress, necessarily requires the court to make a factual determination before it can exercise its discretion to grant or deny the motion . . . . In making its factual determination whether a stipulated judgment should be opened, the court must inquire into whether the decree itself was obtained by fraud, duress, accident or mistake." (Citation omitted; internal quotation marks omitted.) *Jenks* v. *Jenks*, 232 Conn. 750, 753, 657 A.2d 1107 (1995). "Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." (Internal quotation marks omitted.) *Reiner, Reiner & Bendett, P.C.* v. *Cadle Co.*, supra, 278 Conn. 107.

"A stipulated judgment . . . is not voidable on the ground that it was accepted with reluctance, so long as its procurement was not the result of fraud, duress, or mistake. . . . To conclude that a stipulated judgment resulted from duress, the finder of fact must determine that the misconduct of one party induced the party seeking to avoid the stipulated judgment to manifest assent thereto, not as an exercise of that party's free will but because that party had no reasonable alternative in light of the circumstances as that party perceived them to be." (Citations omitted; internal quotation marks omitted.) *Jenks* v. *Jenks*, supra, 232 Conn. 753. "For a party to demonstrate duress, it must prove [1] a wrongful act or threat [2] that left the victim no reasonable

alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim. . . . The wrongful conduct at issue could take virtually any form, but must induce a fearful state of mind in the other party, which makes it impossible for [the party] to exercise his own free will." (Internal quotation marks omitted.) *In re Travis R.*, 80 Conn. App. 777, 782, 838 A.2d 1000, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

The defendant argues that "the thrust of [her] motion to open was that the plaintiff pressured her and that her functioning capacity was seriously diminished when she signed the sales contract and when she signed the stipulated judgment." Therefore, she asserts in her reply brief that "she had no reasonable alternative other than signing the stipulated judgment in light of the circumstances as she perceived them to be." (Internal quotation marks omitted.) In making this argument the defendant relies on *Jenks* v. *Jenks*, supra, 232 Conn. 754–56, in which our Supreme Court agreed with the conclusion of the trial court that the consent of the defendant in that case to a stipulated judgment was procured by duress. In *Jenks*, our Supreme Court noted that the trial court had evidence before it that there was a history of emotional abuse and conduct by the plaintiff that interfered with the defendant's ability to exercise her free will. Id. The defendant now tries to analogize between her own mental state and that of the defendant in *Jenks*. We are not persuaded.

It is clear from *Jenks* and the other cases applying the law of duress in this context that one party must engage in misconduct to induce the other party to assent to the judgment. See id., 753. The defendant's mental condition alone, therefore, cannot support a claim of duress. Accordingly, we must look to the court's findings on the actions of the other individuals involved. The court found that "[Ladwig] did not force or coerce

her. . . . She signed of her own free will. There were no threats."[11] We conclude that this finding is supported by the record. Ladwig testified that he did not coerce or threaten her. The court, as the trier of fact, was free to credit his testimony. See *Lowe* v. *Shelton*, 83 Conn. App. 750, 765, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004). Prior to accepting the stipulated judgment, the court canvassed the attorneys as to their parties' wilful assent. At this canvass, Nieburg was present and did not voice any concerns, even when the court asked if there was any reason why it should not accept the stipulated judgment. Moreover, our review of the record reveals that the defendant did not produce any independent evidence to support her bald assertions that the plaintiff, Nieburg or Ladwig had coerced her. Rather, the defendant repeatedly returned to arguments about her mental state. The court, therefore, did not abuse its discretion in denying the defendant's motion to open the stipulated judgment.[12] Cf. *Sicaras* v. *Hartford*, 44 Conn. App. 771, 789, 692 A.2d 1290 (plaintiff not under duress where no evidence that other party induced assent and plaintiff did not state at canvass that he was not satisfied or did not understand), cert. denied, 241 Conn. 916, 696 A.2d 340 (1997).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The defendant also claims that she was under duress at the time that she signed the purchase and sale agreement. The present appeal relates solely to the court's denial of the defendant's motion to open the stipulated judgment. Accordingly, we do not review whether she was under duress at the time she signed the purchase and sale agreement. We will consider those arguments, however, insofar as they relate to duress at the time the stipulated judgment was rendered.

[12] Insofar as the plaintiff argues that the court could have decided the case differently on the basis of her mental condition, this is beyond the scope of our review. "As an appellate court, we review evidence to decide whether the trial court's conclusion was reasonable, not to determine whether a different conclusion could have been reached." *Smith* v. *Smith*, 249 Conn. 265, 287, 752 A.2d 1023 (1999).