******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SIMON HARDISON *v.* COMMISSIONER
OF CORRECTION
(AC 35246)

Gruendel, Beach and Harper, Js.

*Argued March 6—officially released August 26, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Cameron R. Dorman*, assigned counsel, for the appellant (petitioner).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Nicholas J. Bove, Jr.*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Simon Hardison, appeals from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. The petitioner claims that the habeas court improperly (1) denied his motion to preclude certain testimony, and (2) concluded that his two trial attorneys provided effective assistance of counsel with respect to his decision to enter a guilty plea and to seek a departure from a mandatory minimum sentence pursuant to General Statutes § 21a-283a.[1] We disagree, and affirm the judgment of the habeas court.

The habeas court reasonably could have found the following facts and procedural history. The petitioner was arrested and charged with disorderly conduct pursuant to General Statutes § 53a-182 on September 23, 2009, after a domestic violence incident. Subsequently, he retained Attorney Samantha Kretzmer to represent him.[2] While that case was pending, the petitioner was again arrested and charged with possession of heroin with the intent to sell pursuant to General Statutes § 21a-278 (b), and possession of heroin with the intent to sell within 1500 feet of a school pursuant to General Statutes § 21a-278a (b) (narcotics charges). The petitioner asked Kretzmer to represent him on the narcotics charges as well, but she declined because the petitioner's codefendant with respect to those charges already had engaged in "lengthy conversations" with her.[3] As a result of the conflict of interest, Kretzmer referred the petitioner to Attorney Robert Berke. All charges against the petitioner, however, were consolidated and prosecuted together.

The petitioner's case originally was placed on the domestic violence docket before the trial court, *Dooley, J.* On the basis of the narcotics charges, the petitioner faced a mandatory minimum sentence of eight years incarceration. See General Statutes §§ 21a-278 (b) (five year mandatory minimum sentence) and 21a-278a (b) (three year mandatory minimum sentence imposed consecutively to sentence pursuant to § 21a-278 [b]). While the case was before Judge Dooley, the state offered a plea bargain agreement in which the petitioner would serve a total effective sentence of seven years, with a right to argue that the sentence be suspended after a minimum of one year or a maximum of three years, followed by three years of probation. The petitioner rejected this offer because he wanted the opportunity to argue for a fully suspended sentence. The case then was transferred to the pretrial docket before the court, *Iannotti, J.*

After the case was transferred to the pretrial docket, a new prosecutor, Assistant State's Attorney Michael DeJoseph, assumed responsibility to prosecute the case. He reviewed all the charges and the petitioner's

criminal record. He offered the defendant a plea bargain agreement in which he would serve a total effective sentence of seven years incarceration, execution suspended after twenty-five months, followed by three years of probation.[4] Berke testified at the habeas trial that he does not advise clients whether to accept a plea: "I'll tell my clients what the options are. I'll tell them the evidence the government has, but I rarely recommend a sentence. I tell them it's their decision." The petitioner chose to reject the second plea offer as well. Instead, the petitioner decided to plead guilty to all the charges and to seek a departure from the eight year mandatory minimum sentence pursuant to § 21a-283a.

Section 21a-283a permits a sentencing court to depart from the mandatory minimum sentence if the defendant previously has not invoked the section, the crime did not involve violence,[5] and the defendant can demonstrate "good cause" to depart. Kretzmer stated that she explains a § 21a-283a departure to her clients as "throwing yourself on the mercy of the court." Kretzmer and Berke both advised the defendant that there were "no guarantees" that Judge Iannotti would depart from the eight year mandatory minimum sentence and that, if he did decide to depart from the mandatory minimum, the petitioner likely would still receive some jail time and not a fully suspended sentence. Although Berke stated that he felt the petitioner had "a decent shot" at securing a departure from the mandatory minimum sentence, he noted that the petitioner probably would be sentenced to some period of incarceration. Judge Iannotti cautioned the petitioner that, "there's no promises here whatsoever what's going to happen," regarding the § 21a-283a departure.[6] After being so advised by his attorneys and the court, the petitioner acknowledged that he was aware of the mandatory minimum sentence and decided to take the chance that Judge Iannotti would depart from the mandatory minimum under § 21a-283a.

Both Kretzmer and Berke presented arguments during the sentencing hearing, asking Judge Iannotti to depart from the mandatory minimum sentence. Before the court resumed the hearing after its lunch recess, Judge Iannotti spoke to Kretzmer, Berke, and DeJoseph. He indicated that, based on the presentence investigation report and the arguments made so far, he was not going to depart from the mandatory minimum sentence. Subsequently, DeJoseph offered not to object if the court vacated the petitioner's guilty plea for the charge of possession of heroin within 1500 feet of a school and sentenced him to a total effective sentence of ten years incarceration, execution suspended after the five year mandatory minimum sentence for the possession of heroin with the intent to sell charge, followed by five years of probation. Kretzmer and Berke then were afforded an opportunity to discuss these developments with the petitioner.

The attorneys advised the petitioner that Judge Iannotti indicated that he was not inclined to depart from the mandatory minimum sentence of eight years, but that DeJoseph had offered not to object to a total effective sentence of ten years, execution suspended after five years, followed by five years of probation. Under this offer, the petitioner's sentence would be suspended three years earlier than under the mandatory minimum sentence that Judge Iannotti said he was inclined to impose.[7] The petitioner, after consulting with Kretzmer and Berke, chose to accept the state's offer. Thereafter, the court sentenced the petitioner to a total effective sentence of ten years incarceration, execution suspended after five years, followed by five years of probation.

On September 6, 2012, the petitioner filed a second amended petition for a writ of habeas corpus alleging that "counsel's failures to adequately advise the petitioner as to the plea offer of seven years suspended after twenty-five months and the consequences of rejecting that offer and entering an open plea" violated his constitutional right to effective assistance of counsel. Specifically, the petitioner alleged that he never had been apprised of the mandatory minimum sentence. Had he been advised properly by counsel, according to the petitioner, he would have accepted the state's offer. The habeas court concluded that Kretzmer and Berke communicated the state's plea bargain offers to the petitioner, that he had been informed that there was an eight year mandatory minimum sentence, and that he was advised of the risks associated with rejecting the state's offers and seeking a departure under § 21a-283a. The habeas court found that the petitioner rejected these offers in the hope that he would receive a fully suspended sentence. Also, the habeas court concluded that the petitioner failed to prove that no reasonable attorney would have attempted to argue for a § 21a-283a departure under the circumstances, and, therefore, Kretzmer's and Berke's performance was not deficient. The habeas court granted the petition for certification to appeal, and this appeal followed.

On appeal, the petitioner claims that the habeas court improperly (1) allowed Kretzmer to testify because (A) he did not waive the attorney-client privilege, and (B) portions of her testimony violated the prohibition on hearsay testimony; and (2) concluded that both Kretzmer's and Berke's representation did not fall below an objective standard of reasonableness, and also that he did not suffer prejudice. We conclude that the testimony was admitted properly, and that the petitioner received effective assistance from counsel.

I

The petitioner claims that the habeas court improperly allowed Kretzmer to testify. This claim is based on

two grounds. First, the petitioner argues that the court improperly found that he waived the attorney-client privilege by putting Kretzmer's communications with him at issue. He reasons that, because Kretzmer was his attorney only for purposes of the disorderly conduct charge and not any of the narcotics charges that gave rise to the mandatory minimum sentence, his second amended petition for a writ of habeas corpus raised only a claim of ineffective assistance of counsel against Berke. As a result, the petitioner claims that he has not put any of his communications with Kretzmer at issue. Second, the petitioner claims that the court improperly allowed Kretzmer to testify regarding Berke's statements to the petitioner because the testimony is inadmissible hearsay. We conclude that the habeas court did not err in admitting Kretzmer's testimony.

### A

The petitioner claims that the court improperly concluded that he implicitly waived the attorney-client privilege with respect to his communications with Kretzmer. "We begin by stating our standard of review. Whether the trial court properly concluded that there is an exception to the attorney-client privilege . . . and, if so, whether it properly delineated the scope and contours of such an exception, are questions of law. . . . Accordingly, our review of [the issue] is plenary. . . .

"[Our Supreme Court has] recognized that the attorney-client privilege was created to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and the administration of justice. . . . Exceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications. . . .

"[The Supreme Court] also [has] recognized . . . that the attorney-client privilege implicitly is waived when the holder of the privilege has placed the privileged communications in issue. . . . [B]ecause of the important public policy considerations that necessitated the creation of the attorney-client privilege [however], the at issue, or implied waiver, exception is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action. . . . *Such is the case when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship.* In those instances the party has waived the right to confidentiality by placing the content of the attorney's advice directly at issue because the issue cannot be determined without an examination of that advice." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Cox*

v. *Burdick*, 98 Conn. App. 167, 171–72, 907 A.2d 1282, cert. denied, 280 Conn. 951, 912 A.2d 482 (2006).

The petitioner reasons that, because Kretzmer did not represent him on the narcotics charges, his communications with her were not at issue for purposes of his ineffective assistance claim, and, therefore, he did not implicitly waive the attorney-client privilege. We disagree. To begin, the petitioner's second amended petition for a writ of habeas corpus stated that he was represented by both Kretzmer and Berke. The petition averred that his constitutional right to the effective assistance of counsel was violated because of "[d]efense counsel's failures to adequately advise the petitioner as to the plea offer of seven years suspended after twenty-five months and the consequences of rejecting that offer and entering an open plea . . . ." The petitioner did not specify whether "counsel" referred to either Kretzmer, Berke, or both. See Black's Law Dictionary (9th Ed. 2009) ("counsel" defined as "[o]ne or more lawyers who represent a client"). We disagree with the petitioner's argument that the petition placed only Berke's communications at issue because it did not allege that Kretzmer's representation was ineffective.

Furthermore, Kretzmer's statements are at issue because, as demonstrated by the testimony at the habeas trial, she and Berke both actively participated in the petitioner's plea negotiations and sentencing. Kretzmer and Berke informed the court, both when the petitioner pleaded guilty and at the sentencing hearing, that they represented the petitioner. The two attorneys advised the petitioner collaboratively with respect to the plea offers that encompassed both the disorderly conduct charge and the narcotics charges. Both Kretzmer and Berke engaged in group discussions with the petitioner, advocated before the sentencing court, and discussed with him Judge Iannotti's candid remarks at the sentencing hearing. Referring in part to the mandatory minimum sentence, Judge Iannotti asked the petitioner before accepting his plea, "[Y]ou discussed all of those issues . . . with your *lawyers*?" (Emphasis added.) The petitioner responded that he did. Judge Iannotti also confirmed before he sentenced the petitioner that the petitioner "[had] time to consult with [his] *lawyers* . . . ." (Emphasis added.)

We conclude that the petitioner put Kretzmer's statements at issue and cannot now claim that they are protected by the attorney-client privilege. Kretzmer and Berke both advised the petitioner and represented him during the plea bargaining process and before the sentencing court. The court confirmed that the petitioner had consulted with his *attorneys* before accepting the state's subsequent offer and entering a plea. Assuming the petition for a writ of habeas corpus was more specific, and only claimed that Berke was ineffective, Kret-

zmer's statements would still be at issue when determining whether Berke adequately advised the petitioner. Because the attorneys advised the petitioner collaboratively, the statements of one attorney directly influence whether the other attorney's advice was adequate. For example, if during group discussions Kretzmer had advised the petitioner that he faced an eight year mandatory minimum sentence, that statement would be relevant as to whether Berke was ineffective by failing to so advise. See *White* v. *Commissioner of Correction*, 145 Conn. App. 834, 841, 77 A.3d 832 (deficient performance depends on surrounding circumstances at trial), cert. denied, 310 Conn. 947, 80 A.3d 906 (2013). We conclude that the petitioner has waived the attorney-client privilege because the issues raised in his petition cannot be determined without examining Kretzmer's advice, and, therefore, the habeas court did not err in denying the motion in limine to preclude her testimony. See *Cox* v. *Burdick*, supra, 98 Conn. App. 173.

B

The petitioner also claims that the habeas court improperly allowed Kretzmer to testify as to Berke's out-of-court statements in violation of the prohibition on hearsay testimony. The petitioner does not specify what testimony he takes issue with, but at trial he objected generally to Kretzmer's testimony regarding Berke's conversations with the petitioner. Kretzmer testified as to the substance of conversations that she and Berke collectively had with the petitioner, but did not testify as to what Berke individually said during those conversations.[8] We conclude that the habeas court properly admitted Kretzmer's testimony.

"To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay . . . [is a] legal [question] demanding plenary review." (Internal quotation marks omitted.) *State* v. *Miguel C.*, 305 Conn. 562, 571, 46 A.3d 126 (2012). "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible . . . ." *State* v. *Calderon*, 82 Conn. App. 315, 321, 844 A.2d 866, cert. denied, 270 Conn. 905, 853 A.2d 523, cert. denied, 543 U.S. 982, 125 S. Ct. 487, 160 L. Ed. 2d 361 (2004). "If such a statement [however] is offered for a purpose other than establishing the truth of the matters contained in the statement, it is not hearsay." (Internal quotation marks omitted.) Id., 323.

We conclude that Kretzmer's testimony was not hearsay because, to the extent that she was summarizing Burke's out-of-court statements, those statements were not offered for the truth of the matter asserted therein. The petitioner alleged that he was not made aware of

the mandatory minimum sentence prior to rejecting the state's plea offer, and that he was provided with "unreasonable advice." In so far as Kretzmer summarized Burke's out-of-court statements, that testimony was relevant to show that the statements were made, not that the statements made were true. As such, her testimony was not hearsay. See *State* v. *Calderon*, supra, 82 Conn. App. 323; see also *Warner* v. *Warner*, 124 Conn. 625, 638, 1 A.2d 911 (1938) (plaintiff's testimony regarding attorney's statements admissible "to show what that advice was for the purpose of proving [whether] she followed it as she alleged"). Furthermore, even if Kretzmer's testimony was inadmissible hearsay, any error in admitting that testimony was harmless because it was merely cumulative of Berke's properly admitted testimony. See *State* v. *Dehaney*, 261 Conn. 336, 364–65, 803 A.2d 267 (2002), cert. denied, 537 U.S. 1217, 123 S. Ct. 1318, 154 L. Ed. 2d 1070 (2003). For the foregoing reasons, we conclude that the habeas court did not err in admitting Kretzmer's testimony.

## II

The petitioner's final claim is that the habeas court improperly concluded that Kretzmer and Berke provided effective assistance as his trial attorneys with respect to advising him regarding the state's plea offer and his decision to seek a departure from the mandatory minimum sentence.[9] He specifically claims that Berke and Kretzmer failed to recognize that the trial court was not likely to depart from the mandatory minimum sentence pursuant to § 21a-283a and, as a result, they improperly failed to advise him to accept the state's plea offer. We disagree.

"We begin by setting forth the applicable standard of review and the law governing ineffective assistance of counsel claims. The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous." (Internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 435, 1 A.3d 1242 (2010), cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011).[10] "[T]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citation omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that

the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Citations omitted; internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, supra, 123 Conn. App. 435–36.

The petitioner claims that his trial counsel were ineffective with respect to his decision to reject the state's plea offer and to enter a guilty plea. Regarding claims related to a petitioner's decision to plead guilty, "[o]n the one hand, defense counsel must give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty. . . . As part of this advice, counsel must communicate to the defendant the terms of the plea offer . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed . . . . On the other hand, the ultimate decision whether to plead guilty must be made by the defendant. . . . And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer. . . . Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because [r]epresentation is an art . . . and [t]here are countless ways to provide effective assistance in any given case . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 438.

The petitioner specifically claims that Kretzmer and Berke were ineffective because they failed to advise him effectively regarding his chance of successfully pursuing a departure from the mandatory minimum sentence pursuant to § 21a-283a. Section 21a-283a provides in relevant part: "[W]hen sentencing a person convicted of a violation of any provision of this chapter . . . for which there is a mandatory minimum sentence, which did not involve the use, attempted use or threatened use of physical force against another person or result in the physical injury or serious physical injury of another person, and in the commission of which such person neither was armed with nor threatened the use of or displayed or represented by word or conduct that such person possessed any firearm, deadly weapon or dangerous instrument . . . the court may, upon a showing of good cause by the defendant, depart from

the prescribed mandatory minimum sentence, provided the provisions of this section have not previously been invoked on the defendant's behalf . . . ." The petitioner argues that Kretzmer and Berke were ineffective because they should have known that the facts and circumstances of his case would not constitute "good cause" under the statute, and, as a result, they should have instructed him to accept the state's plea offer. We disagree, and conclude that the petitioner has not demonstrated that either Kretzmer's or Berke's performance fell below an objective standard of reasonableness.

The habeas court credited both Kretzmer's and Berke's testimony that they advised him of the risks of pleading guilty and pursuing a departure under § 21a-283a, including the possibility that he could be sentenced to the mandatory minimum of eight years incarceration. Counsel's performance was not constitutionally deficient, as they "communicate[d] to the [petitioner] the terms of the plea offer [and] . . . inform[ed] the [petitioner] of . . . the alternative sentences to which he will mostly be exposed . . . ." (Internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, supra, 123 Conn. App. 438. There is no requirement that counsel advise his client to accept a plea. Id., 437.

Furthermore, the petitioner provided no evidence that pursuing a departure from the mandatory minimum sentence under § 21a-283a was not reasonably feasible. The only witnesses that testified regarding the standard for pursuing a departure were Kretzmer and Berke. Kretzmer testified that, in her experience: "Judge Iannotti has always told me . . . he doesn't like [to depart under § 21a-283a] when [there are] crimes of violence. . . . There was no issue of violence here in the [petitioner's] case." Berke stated that what constituted "good cause" to depart from the mandatory minimum was left to the discretion of the trial court. Both attorneys believed that there was a reasonable chance that the trial court would depart from the mandatory minimum sentence. The petitioner did not present any evidence to the habeas court that tended to show that, given the facts and circumstances of his case, it was not reasonably feasible to pursue a departure pursuant to § 21a-283a. We conclude that the petitioner has failed to meet his burden of proof that his attorneys were ineffective, and, therefore, the habeas court properly denied his petition for a writ of habeas corpus. See *Gibson* v. *Commissioner of Correction*, 98 Conn. App. 311, 316–17, 908 A.2d 1110 (2006) (petitioner failed to show deficient performance when no evidence to support claim), cert. denied, 281 Conn. 908, 916 A.2d 49 (2007).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 21a-283a provides: "Notwithstanding any provision of the general statutes, when sentencing a person convicted of a violation of any provision of this chapter, except a violation of subsection (a) or (c) of section 21a-278a, for which there is a mandatory minimum sentence, which did not involve the use, attempted use or threatened use of physical force against another person or result in the physical injury or serious physical injury of another person, and in the commission of which such person neither was armed with nor threatened the use of or displayed or represented by word or conduct that such person possessed any firearm, deadly weapon or dangerous instrument, as those terms are defined in section 53a-3, the court may, upon a showing of good cause by the defendant, depart from the prescribed mandatory minimum sentence, provided the provisions of this section have not previously been invoked on the defendant's behalf and the court, at the time of sentencing, states in open court the reasons for imposing the particular sentence and the specific reason for imposing a sentence that departs from the prescribed mandatory minimum sentence."

[2] As a result of the events giving rise to the disorderly conduct charge, the petitioner also was charged with violation of a conditional discharge. That charge is not relevant to this appeal.

[3] See generally rule 1.7 of the Rules of Professional Conduct.

[4] The transcript of the plea hearing indicates that there was some confusion as to whether, after the case was transferred to the pretrial docket, the petitioner still could have accepted the state's prior offer of a total effective sentence of seven years incarceration, execution suspended after three years with a right to argue down to one year, followed by three years of probation. DeJoseph represented that he did not consider that offer to be available after the transfer, and explained at the plea hearing as follows: "[A]fter talking with [the previous state's attorney] . . . [the parties] were unable to resolve the case over in [domestic violence court]. In my mind, then, it comes over here, it's looked at . . . de novo by the prosecuting authorities." DeJoseph later stated: "All I know is the case is in front of me now, [and] I'm putting an offer on that I think is appropriate based upon his record [and] the facts of the case." The habeas court concluded that the petitioner rejected the initial offer because he wanted to pursue a fully suspended sentence.

[5] General Statutes § 21a-283a provides, in relevant part, that the sentencing court may depart from the mandatory minimum sentence if the crime "did not involve the use, attempted use or threatened use of physical force against another person or result in the physical injury or serious physical injury of another person, and in the commission of which such person neither was armed with nor threatened the use of or displayed or represented by word or conduct that such person possessed any firearm, deadly weapon or dangerous instrument . . . ."

[6] At the habeas trial, Kretzmer testified: "[W]e had relayed to [the petitioner] before he entered the pleas, you either accept Attorney DeJoseph's offer of the seven years suspended after twenty-five months, three years probation or you go forward with [§ 21a-283a] or there's [a] trial. I mean those were the only options . . . . [H]e kept saying over and over, 'I don't want the twenty-five months,' so it was either trial or [§ 21a-283a]."

[7] At the habeas trial DeJoseph also noted that, even after Judge Iannotti had said he was not inclined to depart from the mandatory minimum sentence: "We didn't know what the judge was going to do on the top number . . . we didn't know if it was going to be something suspended after eight [years] and we did not know if he was going to get probation or a period of special parole. There were a lot of alternatives the judge had opened up to him because it was an open plea and . . . no one was aware of what exactly the judge intended. We only knew that the number to serve was going to be at least eight years."

[8] For example, Kretzmer testified: "We made it clear to him that there's a chance he wasn't going to get the judge to depart . . . ."

[9] The petitioner claims that his petition for a writ of habeas corpus alleged only that Berke was ineffective, and makes no allegations related to Kretzmer's representation. He argues in the alternative, however, that Kretzmer also provided ineffective assistance. As noted previously, the petition does not specify which attorney the petitioner claims was ineffective, and the plain language indicates that the petitioner alleged both counsel were ineffective. Furthermore, because testimony at the habeas trial reflects that the two attorneys engaged in a collaborative effort to advise and represent the petitioner at all times relevant to this appeal, we interpret the petitioner's

claim as alleging that both Kretzmer and Berke provided ineffective represen-
tation. We agree with the respondent, the Commissioner of Correction,
however, that any claim that Kretzmer provided ineffective assistance as a
result of a conflict of interest was not alleged in the petition and was not
before the habeas court. We therefore decline to review it. See *Alexander*
v. *Commissioner of Correction*, 103 Conn. App. 629, 640, 930 A.2d 58, cert.
denied, 284 Conn. 939, 973 A.2d 695 (2007).

[10] The petitioner also claims that the habeas court made several clearly
erroneous factual findings not supported by the evidence. After a careful
review of the record, we conclude that these findings have support and that
the petitioner's claims are meritless. See *Robert B.* v. *Commissioner of
Correction*, 85 Conn. App. 740, 742, 859 A.2d 38, cert. denied, 272 Conn.
904, 863 A.2d 697 (2004).

---