******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JEFFREY A. RUTHERFORD, COTRUSTEE OF THE
WILLIAM A. RUTHERFORD TRUST *v.* RICHARD J.
SLAGLE, ESQUIRE, COTRUSTEE OF THE
WILLIAM A. RUTHERFORD TRUST
(SC 21066)

Mullins, C. J., and D'Auria, Ecker, Alexander, Dannehy and Bright, Js.

*Syllabus*

The plaintiff, who, along with the defendant, was a cotrustee of the decedent's trust, appealed to the Superior Court from the decree of the Probate Court, which had granted the defendant's petition to construe the trust and ordered that the trust estate be distributed in equal shares to the decedent's children, including the plaintiff. In his probate appeal, the plaintiff challenged the Probate Court's decree "in toto" and urged the Superior Court to overrule the decree, and, under his reasons for the appeal, raised two claims concerning discovery in the Probate Court. The defendant thereafter moved for summary judgment, which the Superior Court granted, reasoning that, because the plaintiff's reasons for the appeal were limited to issues regarding discovery in the Probate Court, and because there was no dispute that the plaintiff did not make any discovery request or that the Probate Court did not issue any orders regarding discovery, there was no genuine issue of material fact regarding the substance of the plaintiff's appeal. The plaintiff appealed from the Superior Court's judgment, claiming that summary judgment is not an available or appropriate remedy in a probate appeal and that, even if it is, the Superior Court improperly failed to engage in a de novo consideration of the issue resolved by the Probate Court concerning the proper distribution of the trust estate. *Held*:

The term "any action" in the rule of practice (§ 17-44) allowing any party in a civil matter to move for summary judgment includes probate appeals in the Superior Court, and, accordingly, the plaintiff could not prevail on his claim that summary judgment was not available in a probate appeal.

The genealogy of Practice Book § 17-44, as well as the nature and purpose of the summary judgment procedure, which is to prevent unnecessary trials when it has been established that there is no dispute regarding the material facts, supported the conclusion that a probate appeal is an "action" for purposes of § 17-44.

Nevertheless, the Superior Court improperly granted the defendant's motion for summary judgment in the plaintiff's probate appeal, as that court failed to engage in a de novo consideration of the issue resolved by the Probate Court, namely, how the trust estate was to be distributed pursuant to the terms of the trust, and, instead, focused solely on the plaintiff's claims regarding discovery, which were irrelevant in a trial de novo in the Superior

Court, where the court must make its own determination on the merits and the parties are entitled to conduct discovery anew.

Argued March 6—officially released May 27, 2025

*Procedural History*

Appeal from the decision of the Probate Court for the district of Greenwich granting the plaintiff's petition to construe a trust and ordering that the trust estate be distributed, brought to the Superior Court in the judicial district of Fairfield, where the court, *Gould, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed. *Reversed*; *further proceedings*.

*Dana M. Hrelic*, with whom was *Meagan A. Cauda*, for the appellant (plaintiff).

*Linda Pesce Laske*, with whom, on the brief, was *Eric M. Gross*, for the appellee (defendant).

*Opinion*

BRIGHT, J. This case requires us to determine whether an appeal from a decree of a probate court can be resolved on a motion for summary judgment and, if so, whether, in the present case, the Superior Court, sitting as a probate court, properly rendered summary judgment for the defendant, Richard J. Slagle, Esquire, Cotrustee of the William A. Rutherford Trust (trust). The plaintiff, Jeffrey A. Rutherford, who also is a cotrustee of the trust, appeals from the judgment of the Superior Court denying his appeal from the decree of the Probate Court, which ordered that the trust estate be distributed.[1] The plaintiff claims that (1) summary judgment is neither an available nor appropriate remedy in a probate appeal because a probate appeal is not an "action" within the meaning of Practice Book § 17-44,

---

[1] The plaintiff timely appealed from the judgment of the Superior Court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

and (2) even if summary judgment is available in a probate appeal, the court erred in rendering summary judgment for the defendant because it did not engage in a de novo consideration of the issue resolved by the Probate Court. We disagree with the plaintiff's first claim but agree with his second claim. Accordingly, we reverse the judgment of the Superior Court.

The record reveals the following undisputed facts and procedural history. On February 11, 2002, William A. Rutherford (William) executed an agreement of trust, which created the trust between himself, as grantor, and himself and his wife, Joyce M. Rutherford (Joyce), as trustees. The agreement of trust expressly provided that the trust was "fully revocable and amendable," and that William had the right to amend or modify the agreement "in any respect at any time." On December 21, 2004, William and Joyce executed the First Amendment and Restatement of Agreement of Trust Dated February 11, 2002 by William A. Rutherford, Grantor (first amended trust). William died on November 21, 2005, and, pursuant to the terms of the first amended trust, the plaintiff and Charles E. Mosher became cotrustees of the first amended trust, with Mosher designated as an "independent [t]rustee," and the defendant designated as an alternative independent trustee if Mosher ceased to serve in that capacity. (Emphasis omitted; internal quotation marks omitted.) After William's death, the trust estate was to be used for Joyce's benefit during her lifetime while also minimizing federal estate taxes and state death taxes. Joyce died on June 30, 2019, and Mosher died on February 9, 2019, leaving the plaintiff and the defendant as the cotrustees of the first amended trust. Upon Joyce's death, the remaining principal of the trust estate, along with any associated income, was to be distributed to William and Joyce's children, Joan Margaret Rutherford Nichipor, William

Charles Rutherford, John Robert Rutherford, and the plaintiff (children).

Following Joyce's death, the plaintiff and the defendant could not agree on how the trust estate should be distributed. In particular, the defendant believed that the first amended trust required that the trust estate be distributed in equal shares to William and Joyce's four children, whereas the plaintiff disagreed that the distribution should be done in equal shares. Having reached an impasse, the defendant petitioned the Greenwich Probate Court to construe the first amended trust and to determine how the trust estate should be distributed pursuant to General Statutes § 45a-98 (a) (4) (A).[2] After a hearing, the Probate Court issued a decree, granting the defendant's petition and ordering that the trust estate be distributed in four equal shares to the children (decree).

The plaintiff filed the underlying probate appeal in the Superior Court pursuant to General Statutes § 45a-186,[3] challenging the decree "in toto." In his complaint, the plaintiff stated, as his "[r]easons of [a]ppeal," that the "Probate Court erred in issuing the decree." See General Statutes § 45a-186 (c) (complaint in probate appeal "shall state the reasons for the appeal"). The plaintiff requested that the Superior Court "[s]ustain [his] appeal and overrule [the] decree" and "[g]rant any and all other remedy at law or equity that [does] pertain, as per . . . § 45a-186 et seq." The defendant filed a

[2] General Statutes § 45a-98 (a) provides in relevant part: "Probate Courts in their respective districts shall have the power to . . . (4) . . . determine the validity or construe the meaning and effect of (A) any will or trust agreement if a construction is required in connection with the administration or distribution of a trust or estate . . . ."

[3] General Statutes § 45a-186 provides in relevant part: "(b) Any person aggrieved by an order, denial or decree of a Probate Court may appeal therefrom to the Superior Court. . . .

"(c) An appeal shall be commenced by filing a complaint in the Superior Court in the judicial district in which such Probate Court is located . . . ."

request to revise, asking that the plaintiff specify the way in which the Probate Court erred in issuing the decree. In response, the plaintiff filed the operative amended complaint, which set forth two reasons of appeal: (1) "[t]he Probate Court erred by not permitting [the plaintiff] to complete discovery before holding a hearing and issuing [the] decree," and (2) "[s]uch discovery . . . was necessary for [the plaintiff] to make an informed decision on proper distribution pursuant to the terms of the [first amended] trust."

The defendant subsequently filed an answer to the amended complaint and a motion for summary judgment with an accompanying memorandum of law and supporting documentation.[4] The defendant contended that the plaintiff either is not aggrieved or cannot demonstrate that the Probate Court erred in issuing the decree based on his stated reasons for the probate appeal. The defendant argued that the appeal should be denied as a matter of law because "there is no possible basis of fact from which [the Superior] Court could find that the Probate Court made any erroneous decision or order concerning discovery, which is the only ground asserted by the plaintiff for [his probate] appeal." He further argued that the second reason for the appeal failed as a matter of law because the plaintiff's "informed decision on proper distribution" was irrelevant to the sole issue before the Probate Court— whether to grant the defendant's petition to distribute the trust estate.

The plaintiff filed an objection to the motion for summary judgment with a memorandum of law and support-

---

[4] The supporting documentation included an affidavit from the defendant, in which he averred that the plaintiff never sought discovery in the Probate Court and that the Probate Court issued no orders concerning discovery. The defendant also submitted copies of the agreement of trust, the first amended trust, and the defendant's petition to interpret the first amended trust.

ing documentation.[5] He argued that summary judgment is not an available remedy in a probate appeal and that, assuming that it is available, there is a genuine issue of material fact precluding summary judgment because there are "ambiguities and irregularities, which the Probate Court did not permit itself to see or consider." The plaintiff also asserted that he had demonstrated aggrievement because the complaint is clear that he is challenging the decree itself and that the decree adversely affected his legal interest as cotrustee. The plaintiff acknowledged that the stated reasons for the appeal concerned the absence of adequate discovery, but he argued that "to narrowly limit the issues under review to those stated in the reasons of appeal in the revised complaint would be more technical than is warranted by probate appeal procedure."

In his affidavit appended to the memorandum of law, the plaintiff averred that he had identified several issues regarding the first amended trust that required further discovery, including: "[d]rafting anomalies in the trust instruments that could have cause[d] the instruments to be incorrect or inaccurate"; the same investment account was listed as an asset wholly owned by separate trusts; the plaintiff discovered an additional trust created by William, which was dated January 19, 2005, and which had not been submitted by the defendant in connection with his petition to construe the first amended trust; and Mosher previously had authored an "affidavit of facts affecting title of real property" in 2015, to clarify apparent ambiguities in the trust documents.[6] The plaintiff stated that, based on his attorney's

[5] The following documents were appended to the plaintiff's memorandum in support of his objection: the defendant's petition to interpret the first amended trust; notice of a hearing in the Probate Court; and an affidavit from the plaintiff.

[6] The plaintiff appended copies of the following documents to his affidavit: Mosher's affidavit of facts affecting title to real property; the first amended trust; a third amendment and restatement of agreement of trust dated February 11, 2002, by Joyce M. Rutherford, executed by Joyce as grantor and

understanding of the probate appeal process, however, he determined that pursuing these issues in a trial de novo in the Superior Court was preferable to proceeding in the Probate Court. The defendant filed a reply memorandum and argued, in relevant part, that "the question for the Superior Court in [the probate] appeal is whether the stated reasons of appeal, if proven, would provide a basis to sustain the appeal."

After hearing argument on the defendant's motion for summary judgment, the Superior Court granted the motion and rendered summary judgment for the defendant. The court reasoned that the plaintiff had appealed from the Probate Court's decree and had alleged that the Probate Court "erred by not permitting the plaintiff to complete discovery before scheduling the hearing and issuing its decision. However, the affidavit provided by the [defendant] indicates that the plaintiff never made any request for discovery; nor did he file any notice of deposition . . . [or] a request to continue the subject probate hearing. Further, the plaintiff fail[ed] to allege in his complaint that the Probate Court issued any orders restricting or prohibiting discovery or [that it] denied a request to continue the hearing. For those reasons, there is no genuine issue of material fact . . . ." This appeal followed.

A brief overview of the relevant procedure in probate appeals will facilitate our discussion of the plaintiff's claims on appeal. The right to appeal from an order, denial or decree of a probate court is purely statutory.

trustee (Joyce's revocable living trust); the first page of an agreement of trust dated January 19, 2005, between William and Joyce, as grantors, and Mosher, as trustee; the appearance filed by the plaintiff's attorney in the Probate Court; notice of a hearing in the Probate Court; an email from the plaintiff's attorney regarding a continuance of the hearing in the Probate Court; the complete agreement of trust dated January 19, 2005; the Probate Court's July 22, 2021 decree; the first amended trust; and Joyce's revocable living trust.

See, e.g., *Connery* v. *Gieske*, 323 Conn. 377, 390, 147 A.3d 94 (2016). Any person aggrieved by an order or decree of a probate court may challenge that order or decree by appealing to the Superior Court. General Statutes § 45a-186 (b). A probate appeal is commenced by filing in the Superior Court a complaint stating the reasons for the appeal. General Statutes § 45a-186 (c). Any person who files a probate appeal in the Superior Court must "serve a copy of the complaint on each interested party," although the failure to make such service does "not deprive the Superior Court of jurisdiction over the appeal." General Statutes § 45a-186 (e). Thus, unlike in ordinary civil actions in the Superior Court, the complaint in a probate appeal is filed before it is served. In the Superior Court, "the appellant shall file reasons of appeal, which upon motion shall be made reasonably specific, within ten days after the return day; and pleadings shall thereafter follow in analogy to civil actions." Practice Book § 10-76 (a).

When, as in the present case, no record was made of the probate proceedings, a probate appeal "is not so much an 'appeal' as a trial de novo . . . ."[7] *Gardner* v. *Balboni*, 218 Conn. 220, 225, 588 A.2d 634 (1991); see also *Barash* v. *Lembo*, 348 Conn. 264, 278, 303 A.3d 577 (2023). The Superior Court sits as a probate court and

---

[7] An appeal from a decree rendered after a recording of the proceedings is made, however, "shall be on the record and shall not be a trial de novo." General Statutes § 45a-186 (d). In "on the record" probate appeals, "the Superior Court shall not substitute its judgment for that of the Probate Court as to the weight of the evidence on questions of fact. The Superior Court shall affirm the decision of the Probate Court unless the Superior Court finds that . . . the findings, inferences, conclusions or decisions are: (1) In violation of the federal or state constitution or the general statutes, (2) in excess of the statutory authority of the Probate Court, (3) made on unlawful procedure, (4) affected by other error of law, (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ." General Statutes § 45a-186b.

takes "jurisdiction of the order or decree appealed from and [tries] that issue de novo." *Kerin* v. *Stangle*, 209 Conn. 260, 264, 550 A.2d 1069 (1988). It must "decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the [P]robate [C]ourt." *Prince* v. *Sheffield*, 158 Conn. 286, 298, 259 A.2d 621 (1969). At the trial de novo, the parties are entitled to a full hearing "with all the judicial safeguards inherent in a full court proceeding"; *Thomas* v. *Arafeh*, 174 Conn. 464, 470, 391 A.2d 133 (1978); and the Superior Court "may receive evidence that could have been offered in the Probate Court, whether or not it actually was offered." *Gardner* v. *Balboni*, supra, 225. Due to the unique features of a probate appeal, including the Superior Court's role in such proceedings, we have observed that "[a]n appeal from [the] Probate Court to the Superior Court is not an ordinary civil action." (Internal quotation marks omitted.) *Salce* v. *Cardello*, 348 Conn. 90, 103, 301 A.3d 1031 (2023).

Against this statutory and common-law backdrop, we consider the plaintiff's claims.

## I

The plaintiff claims that summary judgment is neither an available nor appropriate remedy in a probate appeal because a probate appeal is not an "action" within the meaning of Practice Book § 17-44.[8] We disagree.

___

[8] Practice Book § 17-44 provides: "In any action, including administrative appeals which are enumerated in Section 14-7 (c), any party may move for a summary judgment as to any cause of action or defense as a matter of right at any time if no scheduling order exists and the case has not been assigned for trial. If a scheduling order has been entered by the court, either party may move for summary judgment as to any cause of action or defense as a matter of right by the time specified in the scheduling order. If no scheduling order exists but the case has been assigned for trial, a party must move for permission of the judicial authority to file a motion for summary judgment. These rules shall be applicable to counterclaims and cross complaints, so that any party may move for summary judgment upon any counterclaim or cross complaint as if it were an independent action. The pendency of a motion for summary judgment shall delay trial only at the discretion of the trial judge."

As a preliminary matter, we set forth the applicable standard of review and the relevant principles that guide our construction of the rules of practice. The interpretation and application of the rules of practice present a question of law subject to our plenary review. See, e.g., *Brown* v. *Commissioner of Correction*, 345 Conn. 1, 9, 282 A.3d 959 (2022) (plenary review applies when interpreting rules of practice). Our interpretation of a Practice Book rule "is governed by the same principles as those regulating statutory interpretation, namely, the plain meaning rule."[9] (Internal quotation marks omitted.) *State* v. *Pan*, 345 Conn. 922, 938, 291 A.3d 82 (2022). Accordingly, we first "consider the text of the . . . [rule] itself and its relationship to other . . . [rules]." (Internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 594, 181 A.3d 550 (2018). If the meaning of the rule "is plain and unambiguous, the [rule] speaks for itself and there is no occasion to construe it. Its unequivocal meaning

In 2024, the judges of the Superior Court amended Practice Book (2024) § 17-44, substituting the phrase "cause of action" for the word "claim" in the first two sentences of the rule. The amendment, which became effective on January 1, 2025, has no bearing on our analysis. Furthermore, we note that the commentary to the rule explains that this amendment was "not intended to alter summary judgment practice in any respect" but, rather, was intended to make the rule "consistent with the rules on pleadings and motions in Chapter 10, which use the term 'cause of action.' " Practice Book (2025) § 17-44, commentary. In the interest of simplicity, we refer to the current version of the rule unless otherwise indicated.

[9] We note that we have never squarely addressed whether General Statutes § 1-2z applies to the rules of practice. See *Cohen* v. *Statewide Grievance Committee*, 339 Conn. 503, 515 n.12, 261 A.3d 722 (2021) ("[b]ecause the commentary to the Rules of Professional Conduct is formally adopted by the judges of the Superior Court, we have no occasion to examine a question we have not closely examined before: whether, in general, § 1-2z applies to the rules of practice or to the Rules of Professional Conduct"). In the present case, because we conclude that Practice Book § 17-44 is ambiguous, our analysis would be the same regardless of whether § 1-2z applies to our construction of the rules of practice. See, e.g., *Wiseman* v. *Armstrong*, 269 Conn. 802, 809 n.10, 850 A.2d 114 (2004) (when "the relevant statutory text and the relationship of that text to other statutes is not plain and unambiguous . . . our analysis does not involve [§ 1-2z]").

is not subject to modification by way of construction. . . . If . . . [the] rule is ambiguous, however, we construe it with due regard for the authors' purpose and the circumstances surrounding its enactment or adoption." (Internal quotation marks omitted.) *Brown* v. *Commissioner of Correction*, supra, 9. A rule is ambiguous if, when read in context, it "is susceptible to more than one plausible interpretation." (Internal quotation marks omitted.) *Connecticut Housing Finance Authority* v. *Alfaro*, 328 Conn. 134, 142, 176 A.3d 1146 (2018); see id., 159 (*Espinosa, J.*, dissenting).

With these principles in mind, we begin our analysis with the text of Practice Book § 17-44, which provides in relevant part that, "[i]n *any action*, including administrative appeals which are enumerated in Section 14-7 (c), any party may move for a summary judgment as to any cause of action or defense as a matter of right at any time if no scheduling order exists and the case has not been assigned for trial. . . ." (Emphasis added.) The administrative appeals enumerated in Practice Book § 14-7 (c) are those administrative appeals in which the parties are entitled to a trial de novo.[10]

The plaintiff argues that Practice Book § 17-44 must be read to exclude probate appeals because this court's precedent has "established that probate appeals are entirely statutory and not civil causes of action." (Emphasis omitted.) In particular, the plaintiff relies on our decision in *Slattery* v. *Woodin*, 90 Conn. 48, 96 A. 178 (1915), in which we held that "[a]ppeals from probate are not actions or civil causes or actions,

---

[10] Practice Book § 14-7 (c) provides in relevant part that "[a]ppeals in which the parties are entitled to a trial de novo . . . shall, subsequent to the filing of the appeal, follow the same course of pleading as that followed in ordinary civil actions."

Similarly, pursuant to Practice Book § 10-76 (a), "in all appeals from probate the appellant shall file reasons of appeal . . . and pleadings shall thereafter follow in analogy to civil actions."

between party and party," within the meaning of certain statutes. (Internal quotation marks omitted.) Id., 50. He notes that this distinction is reflected in Practice Book § 13-2, which allows discovery "[i]n any civil action, in any probate appeal, or in any administrative appeal," and he argues that the express reference to probate appeals in § 13-2 suggests that the omission of such a reference in Practice Book § 17-44 is intended to exclude probate appeals from the scope of the summary judgment rules. Finally, the plaintiff contends that, because the Probate Court cannot render summary judgment under the Probate Court Rules of Procedure, "neither can the Superior Court when it sits as a probate court."

For his part, the defendant argues that, although probate appeals are not ordinary civil actions, they are adjudicated within the civil division of the Superior Court and, therefore, are governed by the Practice Book. The defendant notes that the Probate Court Rules of Procedure expressly provide that they do not apply to probate appeals in the Superior Court; see Probate Court Rules § 2.2 (b);[11] and he argues that "[t]here is no logical or practical reason why the Superior Court should be required to hold an unnecessary trial [when] no genuine [issues of material fact] exist and the matter can be adjudicated as a matter of law." We conclude that a probate appeal is an "action" within the meaning of Practice Book § 17-44.

As an initial matter, we conclude that the rule is ambiguous, as each party's interpretation is plausible. The plain meaning of the phrase "any action" is broad and inclusive and, therefore, is consistent with the defendant's interpretation. Unlike the phrase "civil

---

[11] Section 2.2 (b) of the Probate Court Rules of Procedure provides: "The rules do not apply to appeals from probate in the Superior Court, matters transferred from a Probate Court to the Superior Court or any other probate matter in the Superior Court."

action," which is defined by statute; see General Statutes § 52-91 ("[t]here shall be one form of civil action"); the word "action" standing alone[12] "has no precise meaning and the scope of proceedings [that] will be included within the term as used in the statutes [or rules] depends [on] the nature and purpose of the particular statute [or rule] in question." (Internal quotation marks omitted.) *Gipson* v. *Commissioner of Correction*, 257 Conn. 632, 641, 778 A.2d 121 (2001); see also *Metcalfe* v. *Sandford*, 271 Conn. 531, 538, 858 A.2d 757 (2004) ("[b]ecause the word action may have different meanings in different contexts . . . we [take] a functional approach in our construction of the [word]" (internal quotation marks omitted)).

At the same time, when Practice Book § 17-44 is read alongside Practice Book § 13-2, the omission of probate appeals from § 17-44 could reasonably be viewed as intentional. See, e.g., *William W. Backus Hospital* v. *Stonington*, 349 Conn. 713, 726–27, 321 A.3d 1117 (2024) ("[w]hen a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" (internal quotation marks omitted)). The plaintiff's interpretation also is consistent with our precedent recognizing that probate appeals are distinct from ordinary civil actions and that the Superior Court sits as a probate court, not as a constitutional court. See *Kerin* v. *Stangle*, supra, 209 Conn. 264. Therefore, the plaintiff's argument that the Superior Court is limited by the procedures available in the Probate Court is not unfounded.

---

[12] The use of the word "any" as an indeterminate adjective to modify the word "action" suggests that "action" is intended to have an expansive meaning in this context. See *Salce* v. *Wolczek*, 314 Conn. 675, 686, 104 A.3d 694 (2014) ("[the] use of the word 'any' to modify [a] phrase . . . gives the resulting phrase an expansive meaning—one that we will not restrict in the absence of a clear limitation in the text").

We also note that there is a split of authority among trial courts on the interpretation of Practice Book § 17-44 as it relates to probate appeals. Compare, e.g., *In re Palmer*, Superior Court, judicial district of Fairfield, Docket No. CV-07-4022946 (October 7, 2010) (50 Conn. L. Rptr. 739, 739–40) (concluding that probate appeal is not "action" within meaning of § 17-44 based on holding in *Slattery* v. *Woodin*, supra, 90 Conn. 48, and express reference to probate appeals in Practice Book § 13-2), with *Ackerman* v. *Sobol*, Superior Court, judicial district of Hartford, Docket No. CV-07-4027616-S (November 19, 2007) (relying on Practice Book § 10-76 to conclude that "summary judgment is an appropriate vehicle to" resolve issues in probate appeal).

Accordingly, because Practice Book § 17-44 is ambiguous as to whether it applies to probate appeals, "resort to extratextual interpretive aids is warranted." *State* v. *Heredia*, 310 Conn. 742, 759, 81 A.3d 1163 (2013). Considering the genealogy of our summary judgment rule, as well as the nature and purpose of summary judgment procedure, we conclude that a probate appeal is an "action" within the meaning of § 17-44.

In 1928, the judges of the Superior Court adopted the first summary judgment rule, which became effective on February 1, 1929. See C. Clark & C. Samenow, "The Summary Judgment," 38 Yale L.J. 423, 440 (1929). Initially, the rule was limited to "all actions to recover a debt or liquidated demand in money" and to other specific categories of cases. Practice Book (1929) § 14-A. "Until 1963, summary judgment in Connecticut was very narrowly restricted but the 1963 Practice Book greatly expanded the scope of the procedure with the adoption of new rules substantially similar to the procedure provided in the federal rules." *Plouffe* v. *New York, New Haven & Hartford Railroad Co.*, 160 Conn. 482, 487, 280 A.2d 359 (1971). In the 1963 Practice Book, the rule provided in relevant part that summary judgment was

available "[i]n any action, except actions for divorce, legal separation, or annulment of marriage . . . ." Practice Book (1963) § 298. In 1982, the rule was amended to add "and except administrative appeals which are not enumerated in section 257 (d)," which is now Practice Book § 14-7. See Practice Book (1978–1997) § 379; see also 43 Conn. L.J., No. 44, p. 28C (May 4, 1982). In 1998, the rules were reorganized, and the summary judgment rule was again amended to delete "except actions for divorce, legal separation, or annulment of marriage," so that only the exclusion of administrative appeals not enumerated in § 257 (d) remained. See Practice Book (1998) § 17-44. In 2014, the first sentence was rephrased to provide "[i]n any action, including administrative appeals which are enumerated in Section 14-7"; Practice Book (2014) § 17-44; and, in 2018, the rule was amended again to specify that "any action" includes administrative appeals that are enumerated in subsection (c) of Practice Book § 14-7. See Practice Book (2018) § 17-44.

The evolution of the rule demonstrates that the scope of the summary judgment rule has been continuously expanded since its adoption, with almost every express limitation on the use of the rule abandoned. The only exception is that Practice Book § 17-44 still limits the use of summary judgment in administrative appeals to those "enumerated in Section 14-7 (c)," which are those "in which the parties are entitled to a trial de novo . . . ." Practice Book § 14-7 (c). Although appeals from the Probate Court to the Superior Court existed before the adoption of our first summary judgment rule in 1928; see, e.g., *St. Leger's Appeal from Probate*, 34 Conn. 434, 446–47 (1867) (Superior Court retries matter in appeal from Probate Court's accepting or rejecting of will); our summary judgment rule never has excluded probate appeals from its scope. It also is significant that our rules of practice have set forth the general

procedures for filing probate appeals since 1890; see Rules of Practice (1890) c. II, pt. XXI, §§ 4 through 6, reprinted in 58 Conn. 588; and, since 1908, the rules have consistently provided that the pleadings should "follow in analogy to *civil* actions." (Emphasis added.) Practice Book (1908) § 13; accord Practice Book § 10-76 (a); Practice Book (1998) § 10-76 (a); Practice Book (1978–1997) § 194; Practice Book (1963) § 151; Practice Book (1951) § 88; Practice Book (1934) § 89. Had the judges of the Superior Court, when adopting and then amending the summary judgment rule, intended to exclude probate appeals from the rule's operation, they could have done so explicitly, as they did for many years with respect to other actions, including administrative appeals, or they could have specifically provided in Practice Book § 10-76 that the summary judgment procedure is not available in probate appeals. Furthermore, the fact that § 10-76 analogizes the pleading process in probate appeals to that in *civil* actions is a strong indication that the reference to "any action" in Practice Book § 17-44 is meant to include not only ordinary civil actions but also probate appeals.[13]

Construing the phrase "any action" to include probate appeals also is consistent with the nature and purpose of summary judgment. Summary judgment "shall be rendered . . . if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as

---

[13] The plaintiff argues that the fact that Practice Book § 17-44 expressly includes administrative appeals but does not mention probate appeals is a clear indication that the judges of the Superior Court intended to exclude probate appeals from the rule's reach. We are not persuaded. As we previously noted in this opinion, certain administrative appeals have always been excluded from the summary judgment rule, and the current rule expressly includes within its purview only administrative appeals in which the parties are entitled to a trial de novo. By contrast, the summary judgment rule has never expressly excluded any probate appeals, so there was never a reason to expressly include a certain category of them within the language of § 17-44.

to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "A motion for summary judgment is designed to eliminate the delay and expense incident to a trial when there is no real issue to be tried." *Dorazio* v. *M. B. Foster Electric Co.*, 157 Conn. 226, 228, 253 A.2d 22 (1968). We have observed that "[t]he fundamental purpose of summary judgment is preventing unnecessary trials. . . . [F]ollowing adequate time for discovery, a plaintiff may properly be called [on] at the summary judgment stage to demonstrate that he possesses sufficient counterevidence to raise a genuine issue of material fact as to any, or even all, of the essential elements of his cause of action." (Citations omitted.) *Stuart* v. *Freiberg*, 316 Conn. 809, 822–23, 116 A.3d 1195 (2015). Although "summary judgment is not well suited to the disposal of complex cases"; (internal quotation marks omitted) *Gould* v. *Mellick & Sexton*, 263 Conn. 140, 147, 819 A.2d 216 (2003); we have definitively stated that "no case is too complex for summary judgment," so long as it can be established that there is no dispute regarding the material facts involved. Id.

This straightforward and expedient procedure is just as beneficial in a probate appeal as it is in any ordinary civil action, and the plaintiff offers no explanation as to why such actions should be excluded from the scope of the rule. Although we have not expressly considered whether a motion for summary judgment is an available procedure in a probate appeal in the Superior Court, we repeatedly have tacitly approved of the use of such procedure in previous cases.[14] Indeed, when a dispute

[14] See, e.g., *Gould, Larson, Bennet, Wells & McDonnell, P.C.* v. *Panico*, 273 Conn. 315, 318–19, 329–30, 869 A.2d 653 (2005) (affirming summary judgment rendered by Superior Court in plaintiffs' appeal from decision of Probate Court denying motions to quash subpoenas and for protective order); *Dept. of Social Services* v. *Saunders*, 247 Conn. 686, 694–95, 715, 724 A.2d 1093 (1999) (reversing summary judgment rendered by Superior Court in appeal from decree of Probate Court granting defendant's application to create irrevocable supplemental needs trust); *Bannon* v. *Schwartz*,

hinges on a purely legal question and no material facts are at issue, requiring parties to engage in an unnecessary trial would serve no useful purpose. See, e.g., *Larobina* v. *McDonald*, 274 Conn. 394, 402, 876 A.2d 522 (2005) ("this court repeatedly has recognized that the desire for judicial efficiency inherent in the summary judgment procedure would be frustrated if parties were forced to try a case [when] there was no real issue to be tried" (internal quotation marks omitted)).

For these reasons, the more reasonable construction of the broad phrase "any action" in Practice Book § 17-44 includes probate appeals.

Contrary to the plaintiff's argument, our decision in *Slattery* v. *Woodin*, supra, 90 Conn. 48, does not require a different result. In *Slattery*, the nature and purpose of the statutes at issue, which concerned the right to a jury trial in actions tried to the Superior Court, indicated that the scope of those statutes was limited to ordinary civil actions. See id., 49–51. As we noted previously in this opinion, the meaning of the word "action" "depends [on] the nature and purpose of the particular statute [or rule] in question." (Internal quotation marks omitted.) *Gipson* v. *Commissioner of Correction*, supra, 257

215 Conn. 633, 638, 646, 577 A.2d 1025 (1990) (reversing summary judgment rendered by Superior Court in appeal from decision of Probate Court determining issue regarding succession tax); *Hotarek* v. *Benson*, 211 Conn. 121, 124–25, 557 A.2d 1259 (1989) (affirming summary judgment rendered by Superior Court in appeal from decree of Probate Court ordering distribution of estate); *Connecticut Junior Republic* v. *Sharon Hospital*, 188 Conn. 1, 4–5, 9, 448 A.2d 190 (1982) (affirming summary judgment rendered by Superior Court in appeal from decree of Probate Court admitting codicil to probate), overruled in part on other grounds by *Erickson* v. *Erickson*, 246 Conn. 359, 716 A.2d 92 (1998); *Lenge* v. *Goldfarb*, 169 Conn. 218, 220, 223, 363 A.2d 110 (1975) (reversing summary judgment rendered by Superior Court in appeal from decision of Probate Court ordering administrator of estate to file supplemental inventory to include certain asset of estate); see also *Buzzard* v. *Fass*, 225 Conn. App. 280, 308–309, 315 A.3d 1119 (2024) (Appellate Court affirmed summary judgment rendered by Superior Court in appeal from decree of Probate Court approving periodic accounting of trust).

Conn. 641. For this reason, "the word action may have different meanings in different contexts . . . ." (Internal quotation marks omitted.) *Metcalfe* v. *Sandford*, supra, 271 Conn. 538. In the present context, nothing in the nature or purpose of the summary judgment rule suggests that probate appeals are not actions within the meaning of Practice Book § 17-44.

In fact, since *Slattery* was decided, the legislature has expanded the jurisdiction of the probate courts, providing the probate courts concurrent jurisdiction with the Superior Court over several matters under § 45a-98 (a), including the construction of inter vivos trusts. Until the passage of No. 93-279, § 6, of the 1993 Public Acts (P.A. 93-279), "courts of probate had jurisdiction under § 45a-98 only to grant administration of intestate estates, [to] admit wills to probate, and to call executors, administrators, trustees, guardians and conservators to account. . . . Probate jurisdiction was so limited that, prior to the enactment of P.A. 93-279, probate judges even lacked authority to construe will provisions unless the construction was incidental to the determination of a matter already within the court's express statutory jurisdiction." (Citation omitted; footnote omitted.) *Bender* v. *Bender*, 292 Conn. 696, 710, 975 A.2d 636 (2009).

Because, by statute, the Superior Court and the Probate Court now have concurrent jurisdiction over actions that involve the interpretation of an inter vivos trust, interpreting "any action" in Practice Book § 17-44 to exclude probate appeals would mean that the availability of summary judgment would depend entirely on whether the case was brought to the Superior Court in the first instance or as a de novo appeal from the Probate Court. Such a distinction makes no sense given that the Superior Court's task is the same regardless of how the case gets to it.

We also are not persuaded that the express reference to probate appeals alongside civil actions and administrative appeals in Practice Book § 13-2 is as significant as the plaintiff contends. To be sure, Practice Book § 17-44 does not expressly reference probate appeals. As we previously noted, though, our summary judgment rule has never expressly excluded probate appeals from its operation, whereas, at one time, the rule did exclude certain ordinary civil actions, and it still today excludes certain administrative appeals. In addition, § 17-44 also does not expressly reference *civil* actions, electing instead to use the broader phrase "any action," which is not limited to ordinary civil actions. Consequently, reading §§ 13-2 and 17-44 together does not compel the conclusion that "any action" excludes probate appeals. Finally, because the Probate Court Rules of Procedure "do not apply to appeals from probate in the Superior Court"; Probate Court Rules § 2.2 (b); we reject the plaintiff's contention that the Superior Court, when sitting as a Probate Court, cannot render summary judgment in a probate appeal. Moreover, notwithstanding the absence of any specific rule authorizing summary judgment in the Probate Court, the Probate Court Rules of Procedure do not prohibit the filing of a motion for summary judgment, which indicates that there is no categorical exclusion of summary judgment from proceedings in the Probate Court.

In sum, although the phrase "any action" as used in Practice Book § 17-44 is ambiguous, when that phrase is construed in light of the rule's genealogy and with due regard to its nature and purpose, the more reasonable interpretation is that a probate appeal is an "action" within the meaning of the rule.

## II

The plaintiff also claims that the trial court improperly rendered summary judgment for the defendant

because it did not engage in a de novo consideration of the issue resolved by the Probate Court. He argues that, because the trial de novo in the Superior Court "is not narrowly limited to the stated reasons for appeal," the court improperly rendered summary judgment in denying his appeal without deciding the appeal as an original proposition, as the law requires. The defendant, however, argues that, because "the plaintiff did not assert that the decree was substantively erroneous in any way, or that additional discovery would provide a basis for such a finding, the . . . court correctly granted [the defendant's motion for] summary judgment on the ground that no genuine issues of fact existed with respect to the asserted reasons of appeal, such that judgment could [be rendered] in favor of the defendant as a matter of law." In his reply brief, the plaintiff responds that he challenged the Probate Court's decree "both generally and specifically," and that the Superior Court improperly failed to conduct a trial de novo as to the issue actually decided by the Probate Court. We agree with the plaintiff.

We begin our analysis with the applicable standard of review. Our review of a trial court's decision to grant a motion for summary judgment is plenary. See, e.g., *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 302, 140 A.3d 950 (2016). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Borelli* v. *Renaldi*, 336 Conn. 1, 8–9, 243 A.3d

1064 (2020). In addition, the interpretation of pleadings, which is required in the present case, always presents a question of law subject to our plenary review. See, e.g., *Hepburn* v. *Brill*, 348 Conn. 827, 838, 312 A.3d 1 (2024).

In a probate appeal, the Superior Court sits as a probate court and takes "jurisdiction of the order or decree appealed from and [tries] that issue de novo." *Kerin* v. *Stangle*, supra, 209 Conn. 264. "In conducting a trial de novo in an appeal from a Probate Court decree, the Superior Court must arrive at an independent determination, without regard to the result reached by the [P]robate [C]ourt. . . . That is, the trial court decides a de novo probate appeal as an original proposition unfettered by, and ignoring, the result reached in the [P]robate [C]ourt." (Citation omitted; internal quotation marks omitted.) *O'Sullivan* v. *Haught*, 348 Conn. 625, 638–39, 309 A.3d 1194 (2024); see also id., 640 ("the appellant is entitled to relitigate the issues that were addressed by the Probate Court without regard to the factual findings or legal conclusions there obtained" (internal quotation marks omitted)). In that de novo proceeding, "[t]he reasons of appeal serve essentially the same functions in defining issues and limiting evidence as does the complaint in any civil matter." *Baskin's Appeal from Probate*, 194 Conn. 635, 642, 484 A.2d 934 (1984). "In the traditional appeal, the scope of review is limited by the issues raised and the supportive evidence submitted in the lower court. In an appeal from probate, however, the informalities of the probate proceeding are corrected by permitting a full hearing in which new evidence may be submitted." (Internal quotation marks omitted.) Id., 641.

In the present case, the plaintiff appealed from the Probate Court's decree granting the defendant's petition to construe the first amended trust and to determine how the trust estate should be distributed. In his

amended complaint, the plaintiff stated that the decree was "being appealed in toto" and requested that the trial court overrule the decree. Accordingly, the issue to be tried de novo in the Superior Court was whether the first amended trust required the trustees to distribute the trust estate in accordance with the defendant's petition. See *Kerin* v. *Stangle*, supra, 209 Conn. 264. The court, however, did not decide that issue. Instead, the court focused on the plaintiff's stated reasons for the appeal and agreed with the defendant that the only issue for the court to decide was "whether the stated reasons of appeal, if proven, would provide a basis to sustain the appeal." The court determined that, because the plaintiff's reasons for the appeal were limited to issues regarding discovery in the Probate Court, and because there was no dispute that the Probate Court did not issue any orders regarding discovery, there was no genuine issue of material fact regarding the substance of the plaintiff's appeal. This was error.

Our decision in *Berkeley* v. *Berkeley*, 152 Conn. 398, 207 A.2d 579 (1965) is instructive. In that case, the Probate Court admitted the decedent's will to probate over the objection of the contestant, who was the decedent's widow, and the contestant appealed from that decree to the Superior Court. Id., 399. The sole reason of appeal was that the decedent's will had been revoked by operation of General Statutes (1958 Rev.) § 45-162[15] because a child was born to the decedent after the decedent had executed the will. Id., 399–400. The proponents of the will filed a demurrer[16] to the contestant's

---

[15] General Statutes (1958 Rev.) § 45-162 provides in relevant part that, "[i]f, after the making of a will . . . a child is born to the testator . . . and no provision has been made in such will for such contingency, such . . . birth . . . shall operate as a revocation of such will. . . ."

[16] "The purpose and scope of a motion to strike are identical to those of a demurrer under the old rules of practice." (Internal quotation marks omitted.) *Nine State Street, LLC* v. *Planning & Zoning Commission*, 270 Conn. 42, 49 n.6, 850 A.2d 1032 (2004).

reason of appeal, which the trial court sustained on the ground that "the statutory requirement . . . [was] fully met by the language of the will before the court." (Internal quotation marks omitted.) Id., 400. The court rendered judgment for the proponents after the contestant failed to replead and thereby affirmed the Probate Court's decree admitting the will to probate. Id. The contestant appealed to this court, claiming that the trial court had improperly sustained the demurrer. Id. This court agreed with the contestant and also concluded that, even if the court was correct in sustaining the demurrer, it improperly rendered judgment for the proponents. Id., 402.

We explained that, because the Superior Court in a probate appeal tries the issue de novo, "the proponent of a will has the burden of proof on the statutory issues of due execution and testamentary capacity exactly as he had in the Probate Court. . . . This is so whether in the appeal from probate the proponent is the appellee or the appellant." (Citations omitted.) Id., 401. In accordance with that principle, we reasoned that, although a contestant should file reasons of appeal stating each claim intended to be raised pursuant to what is now Practice Book § 10-76, "the effect of failing to include in the reasons of appeal either or both of these two statutory issues . . . is to preclude the contestants from introducing any evidence concerning those issues. The proponents, however, must still produce evidence of each statutory issue sufficient, at least, to make out a prima facie case. . . . And the contestants may still cross-examine the proponents' witnesses as to these two statutory issues." (Citation omitted.) Id., 401–402. In contrast, if the contestant fails to include issues in avoidance on which they have the burden of proof, they "are precluded from introducing evidence, or cross-examining the proponents' witnesses, as to any such issue," and "the trier cannot consider any issue in avoid-

ance not made a reason of appeal." Id., 402. Therefore, "[e]ven if the demurrer had been properly sustained to the amended reason of appeal alleging the facts claimed to establish revocation, the effect would be merely to remove that ground as a basis of appeal. . . . The two statutory issues of due execution and testamentary capacity, on which the proponents had the burden of proof, would still remain undisposed of unless and until the proponents had made out, as to each issue, at least a prima facie case." (Citations omitted.) Id. Because the proponents in *Berkeley* had not presented any evidence on those issues, we concluded that the court erred by rendering judgment affirming the decree, regardless of the merits of the demurrer. Id., 402–403.

In *Satti* v. *Rago*, 186 Conn. 360, 365–67, 441 A.2d 615 (1982), we applied the same reasoning in an appeal from a decree of the Probate Court ordering the sale of real property under what is now General Statutes § 45a-164. We explained that, because the issues are statutory, "the burden is on the proponent . . . to establish in the Probate Court, and in the Superior Court, on appeal, the statutory predicate for the court's order. . . . The burden remains the same on appeal whether the proponent is the appellant or the appellee and whether or not the opponent, as appellant, asserts in her reasons of appeal the negative of the statutory issue or issues. . . . If the proponent seeks a private sale, then he must prove that the price and terms of such sale are in the best interests of the estate, even in the absence of a specific claim to the contrary in the reasons for appeal." (Citations omitted.) Id., 366–67.

Although the present case involves neither the probate of a will nor an order for the sale of real property, the same reasoning applies. When, as in the present case, the parties are entitled to a trial de novo in a probate appeal, the Superior Court must decide the substantive issue raised by the plaintiff on appeal and

decided by the Probate Court. Whoever bore the burden of proof in the Probate Court has the same burden in the trial de novo.

Accordingly, because the defendant filed the petition in the Probate Court requesting the court to construe the first amended trust and to order distribution of the remaining trust estate to the children in equal shares, he had the burden of proving in the plaintiff's appeal from the Probate Court's decree that the first amended trust requires that distribution. The plaintiff's operative complaint stated that the decree was "being appealed in toto" and urged the Superior Court to overrule the decree. Consequently, the Superior Court was required to make a de novo determination of how the trust estate was to be distributed pursuant to the terms of the first amended trust. By focusing solely on the plaintiff's stated reasons for appeal, the court did not engage in the required inquiry. In fact, it did not engage in a de novo review at all. In the plaintiff's reasons for the appeal, he alleged that the Probate Court erred by not allowing him to complete discovery before issuing its decree and that such discovery was necessary "to make an informed decision on proper distribution" under the first amended trust. The Superior Court, in rendering summary judgment for the defendant, focused solely on these stated reasons and considered only whether the Probate Court had improperly limited discovery before issuing the decree. Of course, issues regarding discovery in the Probate Court are irrelevant in a trial de novo in the Superior Court because the court must make its own determination on the merits and the parties are entitled to conduct discovery anew in a probate appeal pursuant to chapter 13 of the Practice Book.

We fully appreciate that the parties bear much of the responsibility for the manner in which the Superior Court disposed of the probate appeal. The plaintiff could have more clearly articulated his substantive

attack on the decree in his reasons for the appeal, and he could have sought discovery in the Superior Court. For his part, the defendant could have moved for summary judgment as to the proper distribution of the first amended trust, which was the issue that the Superior Court was required to decide de novo in the plaintiff's probate appeal. If the defendant had moved for summary judgment on that issue, the plaintiff could have explained to the court, pursuant to Practice Book § 17-47, that he required additional discovery to address properly the merits of how the distribution provisions of the first amended trust should be interpreted. Nevertheless, for the reasons we articulated in *Berkeley*, the inadequacy of the stated reasons for the appeal did not obviate the need for the defendant to establish that his petition to construe the first amended trust should be granted, and the court was required to decide that issue "as an original proposition unfettered by, and ignoring, the result reached in the [P]robate [C]ourt." (Internal quotation marks omitted.) *O'Sullivan* v. *Haught*, supra, 348 Conn. 639. Consequently, because the court did not decide the merits of the plaintiff's appeal, the judgment must be reversed.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.